MAURA L. REES, (State Bar No. 191698)
mrees@wsgr.com
SAMUEL J. DIPPO, (State Bar No. 310643)
sdippo@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:   (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Defendant GOOGLE LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SPORT LISBOA E BENFICA – FUTEBOL SAD, <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOE 1, AN UNKNOWN PERSON OR ENTITY, ET AL., <br><br> Defendants. | CASE NO.:  2:18-CV-02978-RSWL-E <br><br> **GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date: August 28, 2018 <br> Time: 10:00 a.m. <br> Judge: Hon. Ronald S.W. Lew <br> Courtroom: TBD |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ..................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES...........................................2

INTRODUCTION ..................................................................................................2

STATEMENT OF FACTS ......................................................................................3

LEGAL STANDARD .............................................................................................4

ARGUMENT ...........................................................................................................5

I.   The CDA Bars Plaintiff's Claim for Negligent Interference with
     Economic Relations and Its Claim Under the Defend Trade Secrets Act ......5

     A.   Congress enacted Section 230 of the CDA as a broad limitation
          of liability for interactive computer services. ...................................5

     B.   Google's Blogger is an "interactive computer service." ......................8

     C.   The blog posts at issue were created by "another information
          content provider." ...............................................................................9

     D.   Plaintiff's claims seek to treat Google as a speaker or publisher
          of information posted by others and are accordingly barred by
          Section 230 of the CDA. ....................................................................10

II.  Plaintiff's ECPA Claim Is Insufficiently Pleaded and Fails As a Matter
     of Law ..............................................................................................................13

     A.   Plaintiff has failed to plausibly allege the "interception" that
          ECPA requires.....................................................................................13

     B.   ECPA does not apply extraterritorially and Plaintiff alleges no
          interception within the United States..................................................15

     C.   Plaintiff has not alleged, and cannot allege, that Google has
          knowledge sufficient to be liable under ECPA...................................17

     D.   ECPA Does Not Recognize Secondary Liability. ...............................18

III. Plaintiff's Negligent Interference Claim Is Barred as Matter of Law as
     Preempted by the California Uniform Trade Secrets Act and is
     Insufficiently Pleaded ......................................................................................19

CONCLUSION......................................................................................................21

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ARC Ecology v. U.S. Dep't of the Air Force,*
411 F.3d 1092 (9th Cir. 2005)................................................................. 16

*Ascentive, LLC v. Opinion Corp.,*
842 F. Supp. 2d 450 (E.D.N.Y. 2011)................................................... 12

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..............................................................4, 5, 21

*Asia Econ. Inst. v. Xcentric Ventures LLC,*
No. CV 10-01360 SVW,
2011 WL 2469822 (C.D. Cal. May 4, 2011) ............................................. 12

*Barnes v. Yahoo!, Inc.,*
570 F.3d 1096 (9th Cir. 2009)................................................... 8, 10

*Batzel v. Smith,*
333 F.3d 1018 (9th Cir. 2003)............................................................. 6

*Be In, Inc. v. Google Inc.,*
No. 12-CV-03373-LHK,
2013 WL 5568706 (N.D. Cal. Oct. 9, 2013)...................................... 20

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ....................................................................... 4, 5

*Ben Ezra, Weinstein & Co. v. Am. Online Inc.,*
206 F.3d 980 (10th Cir. 2000)....................................................... 6, 12

*Ben Ezra, Weinstein & Co. v. Am. Online, Inc.,*
No. 97-485 LH/LFG,
1999 WL 727402 (D.N.M. Mar. 1, 1999),
*aff'd*, 206 F.3d 980 (10th Cir. 2000) ............................................... 7

*Blumenthal v. Drudge,*
992 F. Supp. 44 (D.D.C. 1998) ..................................................... 6

*Bunnell v. Motion Picture Ass'n of Am.,*
567 F. Supp. 2d 1148 (C.D. Cal. 2007)...................................... 15

*Carafano v. Metrosplash.com, Inc.,*
339 F.3d 1119 (9th Cir. 2003)....................................................... 8, 9

*Chua Han Mow v. United States,*
730 F.2d 1308 (9th Cir. 1984).................................................... 16

*Collins v. Purdue Univ.,*
703 F. Supp. 2d 862 (N.D. Ind. 2010)............................................ 8

*Comput. Econ., Inc. v. Gartner Grp., Inc.*,
　　No. 98-CV-0312 TW (CGA),
　　1999 WL 33178020 (S.D. Cal. Dec. 14, 1999) ............................................ 20

*Cornelius v. DeLuca*,
　　No. 1:09CV72 SNLJ,
　　2009 WL 2568044 (E.D. Mo. Aug. 18, 2009) ............................................ 10

*Crowley v. Cybersource Corp.*,
　　166 F. Supp. 2d 1263 (N.D. Cal. 2001) .................................................... 15

*Digital Envoy, Inc. v. Google, Inc.*,
　　370 F. Supp. 2d 1025 (N.D. Cal. 2005) .................................................... 19

*DiMeo v. Max*,
　　433 F. Supp. 2d 523 (E.D. Pa. 2006),
　　*aff'd*, 248 F. App'x 280 (3d Cir. 2007) ...................................................... 7

*Doe v. GTE Corp.*,
　　347 F.3d 655 (7th Cir. 2003) .......................................................... 18, 19

*Doe v. MySpace, Inc.*,
　　474 F. Supp. 2d 843 (W.D. Tex. 2007),
　　*aff'd*, 528 F.3d 413 (5th Cir. 2008) ........................................................ 8

*Dolin v. Facebook, Inc.*,
　　No. C 18-0950 SBA,
　　2018 WL 2047766 (N.D. Cal. May 2, 2018) ............................................ 21

*Dowbenko v. Google Inc.*,
　　582 F. App'x 801 (11th Cir. 2014) ........................................................... 9

*DVD Copy Control Ass'n, Inc . v. Bunner*,
　　116 Cal. App. 4th 241 (2004) ................................................................. 20

*Dyroff v. Ultimate Software Grp., Inc.*,
　　No. 17-cv-05359-LB,
　　2017 WL 5665670 (N.D. Cal. Nov. 26, 2017) .......................................... 8

*Exec. Sec. Mgmt., Inc. v. Dahl*,
　　830 F. Supp. 2d 883 (C.D. Cal. 2011) .................................................... 15

*F.T.C. v. Accusearch Inc.*,
　　570 F.3d 1187 (10th Cir. 2009) .............................................................. 10

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
　　521 F.3d 1157 (9th Cir. 2008), .............................................................. 11

*Freeman v. DirecTV, Inc.*,
　　457 F.3d 1001 (9th Cir. 2006) ............................................................... 18

*Frenken v. Hunter*,
　　No. 17-cv-02667-HSG,
　　2018 WL 1964893 (N.D. Cal. Apr. 26, 2018) .......................................... 8

*Gavra v. Google Inc.*,
No. 5:12-CV-06547-PSG,
2013 WL 3788241 (N.D. Cal. July 17, 2013) ................................. 11

*Goddard v. Google, Inc.*,
640 F. Supp. 2d 1193 (N.D. Cal. 2009) ........................................ 8

*Green v. Am. Online (AOL)*,
318 F.3d 465 (3d Cir. 2003) ...................................................... 11

*GW Equity LLC v. Xcentric Ventures LLC*,
No. 3:07-CV-976-O,
2009 WL 62173 (N.D. Tex. Jan. 9, 2009) ................................... 10

*Hassell v. Bird*,
– P.3d –, 2018 WL 3213933 (Cal. July 2, 2018) ......................... 12

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................ 18

*ISE Entm't Corp. v. Longarzo*,
No. CV 17-9132-MWF(JCx),
2018 WL 1569803 (C.D. Cal. Feb. 2, 2018) ............................... 21

*Jones v. Dirty World Entm't Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) ............................................... 6, 8

*Jurin v. Google Inc.*,
695 F. Supp. 2d 1117 (E.D. Cal. 2010) ...................................... 10

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
171 Cal. App. 4th 939 (2009) ................................................... 19

*Kabbaj v. Google, Inc.*,
No. CV 13-1522-RGA,
2014 WL 1369864,
*aff'd*, 592 F. App'x 74 (3d Cir. 2015) ....................................... 10

*Ketab Corp. v. Mesriani & Assocs.*,
No. 2:14-cv-07241-RSWL (MRW),
2015 WL 5050512 (C.D. Cal. Aug. 26, 2015),
*aff'd in relevant part*, – F. App'x –, 2018 WL 2041424
(9th Cir. May 2, 2018) .............................................................. 22

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) .................................................... 8

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) ................................................. 18

*Klayman v. Zuckerberg*,
910 F. Supp. 2d 314 (D.D.C. 2012),
*aff'd*, 753 F.3d 1354 (D.C. Cir. 2014) ........................................ 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ............................................... 13, 14

*Marcus v. ABC Signature Studios, Inc.*,
   279 F. Supp. 3d 1056 (C.D. Cal. 2017) ......................................................... 22

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
   906 F. Supp. 2d 1017 (C.D. Cal. 2012) ........................................................ 14

*N. Am. Chem. Co. v. Superior Court*,
   59 Cal. App. 4th 764 (1997) .......................................................................... 21

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ...................................................................... 7, 8

*NetApp, Inc. v. Nimble Storage, Inc.*,
   41 F. Supp. 3d 816 (N.D. Cal. 2014) ............................................................ 20

*Noah v. AOL Time Warner Inc.*,
   261 F. Supp. 2d 532 (E.D. Va. 2003),
   *aff'd*, No. 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004) .............. 7, 12

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ..................................................... 13, 15

*Obado v. Magedson*,
   No. 13-2382 (JAP),
   2014 WL 3778261 (D.N.J. July 31, 2014),
   *aff'd*, 612 F. App'x 90 (3d Cir. 2015) ........................................................... 9

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ...................................................................... 12

*PMC, Inc. v. Kadisha*,
   78 Cal. App. 4th 1368 (2000) ....................................................................... 20

*Seldon v. Magedson*,
   No. 11 Civ. 6218 (PAC) (MHD),
   2012 WL 4475274 (S.D.N.Y. July 10, 2012) ................................................. 7

*Shiamili v. Real Estate Grp. of N.Y., Inc.*,
   952 N.E.2d 1011 (2011) ................................................................................ 10

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015),
   *aff'd*, 697 F. App'x 526 (9th Cir. 2017) ....................................................... 11

*Smith v. Intercosmos Media Grp., Inc.*,
   No. 02-1964,
   2002 WL 31844907 (E.D. La. Dec. 17, 2002) ................................................ 7

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
   919 F. Supp. 2d 1112 (D. Nev. 2013) ........................................................... 11

*Suzlon Energy Ltd. v. Microsoft Corp.*,
   671 F.3d 726 (9th Cir. 2011) ........................................................................ 15

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) ...................................................................... 14

*Thompson v. Dulaney,*
 970 F.2d 744 (10th Cir. 1992)..................................................................17

*United States v. Peterson,*
 812 F.3d 486 (9th Cir. 1987)...................................................................16

*Universal Commc'n Sys., Inc. v. Lycos, Inc.,*
 478 F.3d 413 (1st Cir. 2007) .....................................................................8

*VSL Corp. v. Gen. Tech., Inc.,*
 46 U.S.P.Q.2d 1356 (N.D. Cal. 1998)......................................................20

*Zeran v. Am. Online, Inc.,*
 129 F.3d 327 (4th Cir. 1997)................................................................5, 11

*Zheng v. Yahoo! Inc.,*
 No. C-08-1068 MMC,
 2009 WL 4430297 (N.D. Cal. Dec. 2, 2009) .....................................15, 16

**STATUTES**

Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2511 .............passim

47 U.S.C. § 230.........................................................................................passim

CUTSA. Cal. Civ. Code § 3426 .................................................................passim

Declaratory Judgment Act ...............................................................................21

Defend Trade Secrets Act ..........................................................................passim

**RULES**

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 4

L.R. 7-3 ............................................................................................................1

**MISCELLANEOUS**

S. Rep. No. 99-541 (1986),
 *as reprinted in* 1986 U.S.C.C.A.N. 3555)...............................................16

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 28, 2018 at 10:00 a.m. in the U.S. District Court for the Central District of California, Courtroom [TBD], 350 W. 1st Street, Suite 4311, Los Angeles, California 90012, Defendant Google LLC ("Google") shall and hereby does move for an order dismissing the First Amended Complaint as to Google pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Google's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and supporting documents, the papers on file in this action, and any other submissions or arguments as may be presented to the Court.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 28, 2018.

Respectfully submitted,

Dated:  July 6, 2018

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: _____/s/ Maura L. Rees_____
Maura L. Rees
mrees@wsgr.com

Attorneys for Defendant
GOOGLE LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Google is a bystander to the dispute underlying this lawsuit, which is between Plaintiff and the person or persons who allegedly posted Plaintiff's alleged "trade secrets" on various websites on the Internet.  Plaintiff does not allege (nor could it allege in good faith) that Google created any of the content or postings at issue.  Plaintiff nevertheless claims that Google is liable solely because Google websites host the content (posted by others) that Plaintiff finds objectionable.  Plaintiff is mistaken.

Plaintiff originally filed this case on April 10, 2018, asserting 13 counts against Google and other defendants, including that they were co-conspirators in the alleged hacking of Plaintiff's mailbox and website.  *See generally* Complaint.  After Google's counsel identified the myriad deficiencies in the Complaint, and highlighted the federal statutory immunity that protects Google as an interactive computer service provider, Plaintiff filed the First Amended Complaint ("FAC").  The FAC retracts Plaintiff's original, baseless conspiracy allegations asserting participation in hacking by Google and other online services.  Plaintiff continues, however, to complain that Defendants are improperly hosting the disputed content and has added several new claims.  But all of Plaintiff's claims against Google fail as a matter of law.

Plaintiff's claims for negligent interference with economic relations and violation of the federal Defend Trade Secrets Act ("DTSA") are barred, as a matter of law, by Section 509 of the Telecommunications Act of 1996, codified at 47 U.S.C. § 230 (commonly known as Section 230 of the Communications Decency Act ("CDA")) which states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  As an unbroken

line of dozens of cases make clear, the CDA's statutory immunity shields online services like Google from liability for these claims.

Perhaps in recognition of the sweeping protections of the CDA, Plaintiff added a new cause of action in the FAC under the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2511 ("ECPA," also known as the "Wiretap Act"), one of the few claims not barred by federal immunity under the CDA.  But Plaintiff's ECPA allegations fall far short of what is required to state a claim.  Indeed, the allegations of the FAC demonstrate that Plaintiff could *never* allege facts showing that Google is liable for violating ECPA.  First, the FAC alleges that trade secrets were taken from Plaintiff's protected computer systems through a hack of stored emails, which does not qualify as an *interception* as ECPA requires.  Nor does the FAC include any plausible, non-conclusory allegations of interception.  Second, Plaintiff has not alleged that an interception occurred within the United States, as ECPA also requires.  Third, because Plaintiff has made no adequate allegations of interception, it cannot assert that Google violated ECPA's prohibitions on using or disclosing material that has been intercepted, because those prohibitions require Plaintiff to plead and prove that the defendant knew the material in question was acquired as a result of an interception that violated ECPA.  Plaintiff has not pleaded and cannot plead any such knowledge here.  Finally, this claim is especially deficient as against Google because ECPA does not provide for secondary liability, the only theory Plaintiff advances against Google.

Plaintiff is free to pursue its claims against the Doe defendant(s) who have allegedly caused it harm.  But Google should not be a party to this lawsuit, and Plaintiff does not come close to asserting a viable cause of action against it.  The Court should dismiss the FAC against Google with prejudice.

## STATEMENT OF FACTS

Google offers the public a host of popular online tools such as its eponymous search engine, the open-source Android mobile operating system, the

Gmail email service, and the YouTube video streaming service.  Google also operates an online service called Blogger, which allows individuals around the world to create and publish content online for free.  FAC ¶ 13.

Plaintiff is a foreign entity — a "Portuguese public limited company" — and a multi-sports club best known for its professional football (soccer) team based in Portugal.  FAC ¶¶ 1-2.

The core allegation in the FAC is that one or more unknown person(s) or entity(ies), the "Hacker," executed multiple hackings of Plaintiff's "electronic mailbox and website" through a phishing attack and stole the contents therein. FAC ¶ 4.  According to the FAC, the Hacker, or other unknown person(s) working in conjunction with the Hacker ("Co-Conspirators"), then uploaded those allegedly stolen materials onto various websites, including Blogger.  FAC ¶¶ 5, 26, 33.  For the first time in the FAC, Plaintiff identifies 13 web pages on Blogger that "contain or reference [allegedly stolen] documents."  *E.g.*, FAC ¶ 51(uuu-gggg).[1]  Plaintiff alleges that its Portuguese counsel contacted all of the Defendants' online services demanding removal of those materials, but Defendants did not comply with the request.  FAC ¶¶ 27, 36.  Its claims against Google and the other online services are all based on their hosting of the materials that Plaintiff now claims constitute trade secrets.  The FAC asserts a claim for negligent interference with prospective economic advantage against Google, and adds two new claims against it: one under the DTSA and one under ECPA.  FAC ¶¶ 69-108, 137-143.

## **LEGAL STANDARD**

To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the

---

[1] Plaintiff did not identify any of these 13 web pages in the original complaint, and only included them for the first time in the FAC.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

Moreover, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*; *see also Twombly*, 550 U.S. at 555 (courts are "not bound to accept as true a legal conclusion couched as a factual allegation" (citation omitted)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  And a "formulaic recitation of the elements" of a claim is "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55).

## ARGUMENT

### I.   The CDA Bars Plaintiff's Claim for Negligent Interference with Economic Relations and Its Claim Under the Defend Trade Secrets Act.

Two of Plaintiff's claims run headlong into the federal statutory immunity under the CDA which bars claims against Google based on content posted to its Blogger service by third parties.

### A.   Congress enacted Section 230 of the CDA as a broad limitation of liability for interactive computer services.

In enacting the CDA, Congress afforded online services far-ranging immunity against claims based on providing access to materials uploaded to their services by third parties.  It recognized that for the Internet to realize its promise as a communications medium, services could not face liability for hosting such materials, even if a party claimed such materials were problematic. *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("Section 230 was enacted, in part, to maintain the robust nature of Internet communication").

To shield services from claims based upon third party materials, Section 230(c)(1) of the CDA provides:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. § 230(c)(1).  As the Ninth Circuit has explained:

> § 230(c)(1) … overrides the traditional treatment of publishers, distributors, and speakers under statutory and common law.  As a matter of policy, "Congress decided not to treat providers of interactive computer services like other information providers such as newspapers, magazines or television and radio stations, all of which may be held liable for publishing or distributing obscene or defamatory material written or prepared by others.

*Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003) (quoting *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C. 1998)).  In light of the CDA, and subject to limited exceptions not applicable here, only those who originally author content may be held liable for any harm caused by the availability of such content on the Internet, regardless of the theory underlying the cause of action.  *See, e.g.*, *Blumenthal*, 992 F. Supp. at 49 (Congress "made the legislative judgment to effectively immunize providers of interactive computer services from civil liability in tort with respect to material *disseminated by them but created by others*" (emphasis added)); *Ben Ezra, Weinstein & Co. v. Am. Online Inc.*, 206 F.3d 980, 985 n.3 (10th Cir. 2000) (CDA was designed to promote freedom of speech on the Internet "by eliminating the threat of tort-based lawsuits against interactive services for injury caused by the communications of others" (citation omitted) (internal quotation marks omitted) (alterations adopted)).

Section 230(c) has been interpreted broadly, time and again, in favor of Internet services and against litigants (such as Plaintiff) who seek to hold those services liable for the content of others.  *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 408 (6th Cir. 2014) ("The protection provided by § 230 has been understood to merit expansion. . . . [C]ourts have construed the immunity provisions in § 230 broadly.").  It is now beyond dispute that website operators

"are shielded from liability arising from defamation and other state-law claims that are premised on posts of, or links to, third-party content." *Seldon v. Magedson*, No. 11 Civ. 6218 (PAC) (MHD), 2012 WL 4475274, at *16 (S.D.N.Y. July 10, 2012) (CDA "immunizes providers of 'interactive computer services' against liability arising from content created by third parties"); *accord DiMeo v. Max*, 433 F. Supp. 2d 523, 529-31 (E.D. Pa. 2006) (dismissing claim against website owner arising from posts written by third parties), *aff'd*, 248 F. App'x 280 (3d Cir. 2007).[2]

Importantly, the protection of Section 230 is most appropriately applied early in the case.  Indeed, immediate dismissal is especially warranted under the CDA because "immunity is an *immunity from suit* rather than a mere defense to liability and it is effectively lost if a case is erroneously permitted to go to trial." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (emphasis in original) (citation omitted) (internal quotation marks omitted).  Courts therefore "aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal

---

[2]  Claims for injunctive relief are equally barred.  Courts consistently refuse to order interactive computer services to remove content authored by other information content providers. *See, e.g.*, *Smith v. Intercosmos Media Grp., Inc.*, No. 02-1964, 2002 WL 31844907, at *5 (E.D. La. Dec. 17, 2002) ("[A]ny claim made by the plaintiffs for damages or injunctive relief … are precluded by the immunity afforded by Section 230(c)(1), and subject to dismissal."); *Ben Ezra, Weinstein & Co. v. Am. Online, Inc.*, No. 97-485 LH/LFG, 1999 WL 727402, at *3 (D.N.M. Mar. 1, 1999) ("Plaintiff seeks injunctive relief from the Defendant's continued *publication* of inaccurate stock information. AOL is again entitled to Section 230 immunity and this claim will be dismissed as well."), *aff'd*, 206 F.3d 980 (10th Cir. 2000); *Noah v. AOL Time Warner Inc.*, 261 F. Supp. 2d 532, 540 (E.D. Va. 2003) ("[G]iven that the purpose of § 230 is to shield service providers from legal responsibility for the statements of third parties, § 230 should not be read to permit claims that request only injunctive relief."), *aff'd*, No. 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004).

battles.'"  *Id.* at 255 (citation omitted); *see, e.g.*, *Klayman v. Zuckerberg*, 910 F. Supp. 2d 314, 318 (D.D.C. 2012) ("the Court may grant a motion to dismiss on CDA grounds"), *aff'd*, 753 F.3d 1354 (D.C. Cir. 2014); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1202 (N.D. Cal. 2009); *Frenken v. Hunter*, No. 17-cv-02667-HSG, 2018 WL 1964893, at *3 (N.D. Cal. Apr. 26, 2018); *Dyroff v. Ultimate Software Grp., Inc.*, No. 17-cv-05359-LB, 2017 WL 5665670, at *11 (N.D. Cal. Nov. 26, 2017) (all granting motions to dismiss based on the CDA).

Courts have repeatedly held that claims are barred by Section 230 "if (1) the defendant asserting immunity is an interactive computer service provider, (2) the particular information at issue was provided by another information content provider, and (3) the claim seeks to treat the defendant as a publisher or speaker of that information."  *Jones*, 755 F.3d at 409; *see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009)).  All three are easily met here.

### B.     Google's Blogger is an "interactive computer service."

The CDA broadly defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  "[R]eviewing courts have treated § 230(c) immunity as quite robust, adopting a relatively expansive definition of 'interactive computer service[.]'"  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).  The definition readily encompasses websites that function "as an intermediary by providing a forum for the exchange of information between third party users."  *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 848 (W.D. Tex. 2007), *aff'd*, 528 F.3d 413 (5th Cir. 2008); *see also, e.g.*, *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) ("[W]eb site operators . . . are providers of interactive computer services within the meaning of Section 230."); *Collins v. Purdue Univ.*,

1    703 F. Supp. 2d 862, 878 (N.D. Ind. 2010) ("[T]here are many cases holding that

2    websites are under the umbrella of protection of § 230(c)(1).").

3        The Blogger service provided by Google that is at issue here—an online

4    platform that hosts material written by users and allows user to publish their

5    content on the Internet—is unquestionably covered by the CDA.  *Obado v.*

6    *Magedson*, No. 13-2382 (JAP), 2014 WL 3778261, at *4 (D.N.J. July 31, 2014)

7    ("no dispute" that Google, operator of the blogspot.com domain, was an interactive

8    computer service), *aff'd*, 612 F. App'x 90 (3d Cir. 2015); *Dowbenko v. Google*

9    *Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014) ("uncontested" that Google, operator

10   of the blogspot.com domain, is an interactive computer service).

11       **C.    The blog posts at issue were created by "another information**
             **content provider."**
12

13       It is equally clear that every claim Plaintiff asserts against Google is based

14   on information provided by "another information content provider"—either the

15   Hacker or a Co-Conspirator.  The CDA defines "information content provider" as

16   "any person or entity that is responsible, in whole or in part, for the creation or

17   development of information provided through the Internet or any other interactive

18   computer service."  47 U.S.C. § 230(f)(3).  Under this definition, "so long as a

19   third party willingly provides the essential published content, the interactive

20   service provider receives full immunity regardless of the specific editing or

21   selection process."  *Carafano*, 339 F.3d at 1124.

22       The First Amended Complaint states that "Defendant Hacker and [Co-

23   Conspirators]"—not Google—"misappropriated information and documents . . .

24   and posted [them] on websites of the other Defendants."  FAC ¶ 26.  The Hacker

25   or a Co-Conspirator thus are the "information content provider" under Section

26   230(c).  Plaintiff does not allege (nor could it) that Google was in any way

27   involved with preparation or creation of any blog posts.  In the FAC, the only

28   factual allegation Plaintiff makes regarding a connection between the Hacker or the

Co-Conspirators and Google is that one or more Doe Defendants included allegedly stolen materials on posts uploaded to the Blogger service.  This does not make Google responsible as an information content provider.  "A Web site is generally not a 'content provider' with respect to comments posted by third-party users. . . . Creating an open forum for third parties to post content . . . is at the core of what section 230 protects."  *Shiamili v. Real Estate Grp. of N.Y., Inc.*, 952 N.E.2d 1011, 1018 (2011) (citing *DiMeo v. Max*, 248 F. App'x 280, 282 (3d Cir. 2007); *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1195 (10th Cir. 2009)).

**D.    Plaintiff's claims seek to treat Google as a speaker or publisher of information posted by others and are accordingly barred by Section 230 of the CDA.**

Finally, Plaintiff is plainly attempting to hold Google liable for information provided by the anonymous party whom Plaintiff dubs the Hacker or Co-Conspirator.  This analysis does not turn on rote review of the names of causes of action.  Instead, "what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another.  To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'  If it does, section 230(c)(1) precludes liability."  *Barnes*, 570 F.3d at 1101-02.  In this case, Plaintiff's causes of action seek to treat Google as a publisher or speaker.[3]

---

[3] Although the names of the causes of action are irrelevant to determining whether the CDA applies, Courts have dismissed similar "trade secret" and "negligent interference" claims in closely analogous situations.  *E.g.*, *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1122-23 (E.D. Cal. 2010) (negligent interference with contracts); *Cornelius v. DeLuca*, No. 1:09CV72 SNLJ, 2009 WL 2568044, at *3 (E.D. Mo. Aug. 18, 2009) (tortious interference with business expectancies); *GW Equity LLC v. Xcentric Ventures LLC*, No. 3:07-CV-976-O, 2009 WL 62173, at *19 (N.D. Tex. Jan. 9, 2009) (negligent interference *and* misappropriation of trade secrets); *Kabbaj v. Google, Inc.*, No. CV 13-1522-RGA, 2014 WL 1369864, at *2 n.3 (tortious interference with contract), *aff'd*, 592 F. App'x 74 (3d Cir. 2015). So
(continued...)

Plaintiff is suing Google on the grounds that Plaintiff's counsel allegedly asked Google to remove the results of the Hacker's or Co-Conspirator's purportedly illegal actions, and Google declined to comply.  *See, e.g.*, FAC ¶¶ 27, 36.  But the CDA "specifically proscribes liability" for claims based upon an internet service provider acting as a "publisher" or "distributor" of third-party content, especially including claims which seek to hold a defendant "liable for decisions relating to the monitoring, screening, *and deletion of content* from its network—actions quintessentially related to a publisher's role."  *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (emphasis added) (citation omitted).  Section 230 "'precludes courts from entertaining claims that would place a computer service provider in a publisher's role,' and therefore bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content.'"  *Id.* (citation omitted); *see also Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."  (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008))), *aff'd*, 697 F. App'x 526 (9th Cir. 2017).[4]  For this reason, courts consistently deny either damages or injunctive relief claims to compel online

---

(...continued from previous page)

as to trade secret misappropriation claims under state law.  *Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1127 (D. Nev. 2013).

[4] Section 230 is emphatically not a notice-and-takedown regime.  *See Zeran*, 129 F.3d at 332-33 (identifying that the moderator's dilemma—forcing neutral platforms to take down content on mere notice or allegation, or after their own investigation of harmful content—is precisely what Congress intended to avoid by enacting Section 230); *Gavra v. Google Inc.*, No. 5:12-CV-06547-PSG, 2013 WL 3788241, at *2 (N.D. Cal. July 17, 2013) ("[P]roviding third parties with neutral tools to create web content . . . does not create liability, nor does refraining from removing objectionable content, despite receiving notice.").

services to remove third party content appearing on their websites, even if that content is allegedly objectionable.  *Noah*, 261 F. Supp. 2d at 540; *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 471-76 (E.D.N.Y. 2011); *Ben Ezra*, 1999 WL 727402, at *3; *Asia Econ. Inst. v. Xcentric Ventures LLC*, No. CV 10-01360 SVW (PJWx), 2011 WL 2469822, at *7 (C.D. Cal. May 4, 2011) ("Because Defendants are not accountable for such postings under the CDA, they cannot be liable for their effects in tort, and injunctive relief is similarly unavailable."); *Hassell v. Bird*, – P.3d –, 2018 WL 3213933, at *6-10 (Cal. July 2, 2018) (explaining purpose and history of CDA, and holding that Section 230 provided immunity from injunction ordering Yelp to take down allegedly defamatory reviews posted by a user).

That is precisely what Plaintiff seeks to do here.  Because Plaintiff is suing Google, an interactive service provider, over content posted to Google's service by a third party, and seeks to hold Google liable for failing to remove that content, the CDA squarely bars Plaintiff's claims for negligent interference with prospective economic advantage and for violation of the Defend Trade Secrets Act.[5]

---

[5] The CDA contains an exception to its broad immunity for federal intellectual property claims.  47 U.S.C. § 230(e)(2); *see also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (construing the term "any law pertaining to intellectual property" in 230(e)(2) to mean only any *federal* law pertaining to intellectual property (citation omitted)).  But the DTSA is not such a law.  Indeed, Congress expressly declared that the DTSA was not to be construed as a law pertaining to intellectual property.  Defend Trade Secrets Act of 2016, Pub. L. No. 114-153 § 2(g), 130 Stat. 376, 382 (2016) (codified as a note to 18 U.S.C. § 1833) ("This section and the amendments made by this section shall not be construed to be a law pertaining to intellectual property for purposes of any other Act of Congress.").  Accordingly, Plaintiff cannot end run the CDA by manufacturing a DTSA claim.

## II.   Plaintiff's ECPA Claim Is Insufficiently Pleaded and Fails As a Matter of Law.

The ECPA, or Wiretap Act, addresses wiretapping of communications while in transit, subject to a number of exceptions set forth in the statute.  18 U.S.C. § 2511.  It applies to a defendant who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."  18 U.S.C. § 2511(1)(a).  Because "intercepting" a communication requires obtaining it while it is in transmission, ECPA does not apply to improperly obtaining a communication while it is in storage.  *Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 878 (9th Cir. 2002)

Following a meet and confer discussion with Google's counsel about the CDA, Plaintiff added an ECPA claim to the FAC, perhaps in the hope of avoiding the CDA (which does not extend to claims under ECPA).  But that gambit fails because Plaintiff's ECPA claim is plainly deficient for multiple other reasons.

### A.   Plaintiff has failed to plausibly allege the "interception" that ECPA requires.

To impose civil liability, ECPA requires that an "interception" of content occur during transmission.  *See* 18 U.S.C. § 2511(1).  Plaintiff has failed to meet the statute's requirements.

Plaintiff complains that the Hacker "commenced phishing attacks . . . against Plaintiff's electronic mailbox and website, [and] obtained [email] login access."  FAC ¶¶ 4, 91.  While Plaintiff labels this behavior an "interception," it is not.  Plaintiff does not plead, nor can it be plausibly inferred, that the access to Plaintiff's content occurred while the content was being transmitted.  *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (there can be no "interception" of email that has reached mailbox of intended recipient because interception must occur during transmission); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 953 (N.D. Cal. 2014) ("While the Complaint alleges

1   that the defendants wrongfully accessed the accounts at issue . . . nowhere does the

2   Complaint allege that the defendants 'intercepted' any 'electronic communication'

3   as understood under the Wiretap Act.  The Ninth Circuit and other courts have

4   consistently explained that any 'interception' under the meaning of the statute must

5   occur during transmission of the communication."  (footnote omitted)).

6       The claim that someone merely obtained unauthorized account access is not

7   cognizable under ECPA.  *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp.

8   2d 1017, 1024-26 (C.D. Cal. 2012) (no ECPA claim stated where employee

9   accessed Plaintiff's email account and leaked information from it); *see also Theofel*

10  *v. Farey-Jones*, 359 F.3d 1066, 1077-78 (9th Cir. 2004) (ECPA does not apply to

11  disclosure of electronic communications held in electronic storage).  As the *Mintz*

12  court explained:

13      For an email to be "intercepted" in violation of the foregoing
        provisions, "it must be acquired during transmission, not while it is in
14      electronic storage."  The undisputed facts here show that Defendants
        did not access, disclose, or use any emails that had been acquired
15      during transmission.  Rather, the emails Defendants viewed were stored
        on Gmail.

16

17  906 F. Supp. 2d at 1031 (quoting *Konop*, 302 F.3d at 878 & n.6).

18      So too here.  Plaintiff has not alleged any facts plausibly demonstrating that

19  any of what it claims was "highly sensitive, proprietary information" on its

20  computer networks was "intercepted" in transit.  Rather, Plaintiff specifically

21  alleges that it "maintains" these purported trade secrets on a protected computer

22  network.  FAC ¶ 2.  The statements in the FAC that the Doe defendants

23  "intercepted information transmitted through Plaintiff's . . . webpages" and

24  "intercepted . . . email exchanges . . . during the electronic transmission of such

25  emails from Plaintiff's facilities and not while the information is in electronic

26  storage" (FAC ¶¶ 91, 95) are not only conclusory, but also contradicted by

27

28

Plaintiff's allegations.[6]  Conclusory allegations of "interception" that are belied by the facts pleaded are not sufficient to state a claim.  *See NovelPoster*, 140 F. Supp. 3d at 953 (dismissing ECPA claim where plaintiff alleged that "defendants intentionally intercepted and used emails from the individual email accounts without authorization"); *see also Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1268 (N.D. Cal. 2001) ("The Court need not accept a conclusory allegation that conduct alleged in the complaint constituted an interception under the Wiretap Act.").  Here, Plaintiff does not plausibly allege an ECPA "interception." Accordingly, Plaintiff's ECPA claim fails.

**B.     ECPA does not apply extraterritorially and Plaintiff alleges no interception within the United States.**

Plaintiff's ECPA claim also fails because the "ECPA does not apply outside the United States."  *Zheng v. Yahoo! Inc.*, No. C-08-1068 MMC, 2009 WL 4430297, at *4 (N.D. Cal. Dec. 2, 2009) (cited by *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011)).  Plaintiff, a foreign entity, makes no allegation that ties any conduct constituting an ECPA violation to the territorial limits of the United States.  Instead, even if there had been an interception of any protected communication, the only plausible inference is that such interception took place in Portugal, where Plaintiff's "protected computer system" is presumably located.  For example, Plaintiff alleges that certain information was "originating from and received into Plaintiff's electronic mailbox '@slbenfica.pt'" - where the ".pt" domain signifies it is located in Portugal.  FAC ¶ 91.  Further, the

---

[6] Plaintiff also fails to allege the requirement for "interception" of electronic communications that the transmission was "halted" so that the communication did not reach its intended recipients.  *See Exec. Sec. Mgmt., Inc. v. Dahl*, 830 F. Supp. 2d 883, 904 (C.D. Cal. 2011) (for Wiretap Act violation to occur, the defendants' actions must "halt the transmission of the messages to their intended recipients" (quoting *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1154 (C.D. Cal. 2007))); *see also NovelPoster*, 140 F. Supp. 3d at 952 (same).

posts complained about by Plaintiff are on the Portuguese version of Blogger and were written in the Portuguese language.  FAC ¶ 51(uuu-gggg).  Plaintiff thus cannot support ECPA liability based on allegations of an interception occurring outside of the United States.

The *Zheng* court's analysis of this issue is instructive.  The *Zheng* court notes that Congressional legislation is presumed to apply only within the territorial jurisdiction of the United States unless a contrary affirmative intention of Congress is clearly expressed.  2009 WL 4430297, at *2 (N.D. Cal. Dec. 2, 2009) (citing *ARC Ecology v. U.S. Dep't of the Air Force*, 411 F.3d 1092, 1097, 1103 (9th Cir. 2005); *Chua Han Mow v. United States*, 730 F.2d 1308, 1311 (9th Cir. 1984)).  The Ninth Circuit held that there was no extraterritorial application of the previous Wiretap Act.  *See United States v. Peterson*, 812 F.2d 486, 492 (9th Cir. 1987) ("Title III [of the Wiretap Act] has no extraterritorial force").

The *Zheng* court agreed, noting that the 1986 amendments to the Wiretap Act did not alter the extraterritorial application of the statute and referenced Congress's own statement: "Like the Omnibus Crime Control and Safe Streets Act of 1968 which it revises, *the [ECPA] regulates only those interceptions conducted within the territorial United States*."  2009 WL 4430297, at *3 (alteration in original) (emphasis added) (quoting S. Rep. No. 99-541, at 12 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 3555, 3566).

Simply put, the interception of a communication outside of the United States is not an ECPA violation.  Because Plaintiff has failed to adequately allege an interception, much less one occurring within the United States, and there are no facts alleged from which the inference of such an interception could plausibly be made, Plaintiff has not stated a claim under ECPA.

**C.**    **Plaintiff has not alleged, and cannot allege, that Google has knowledge sufficient to be liable under ECPA.**

Plaintiff's claim further fails because Plaintiff does not plausibly allege that Google knowingly used or disclosed any information or content from an interception made "in violation of this subsection."

The standard that a plaintiff must meet to show a knowing violation of ECPA through use or disclosure of intercepted information is a steep one.  As the Tenth Circuit has explained, to be liable, a defendant must actually know two items of information about the content that it uses or discloses.  First, the defendant must know that the information used or disclosed came from an intercepted communication (and as explained above, such knowledge would be impossible in this case).  And second, the defendant must also know facts concerning the circumstances of the interception such that the defendant could determine that the interception was prohibited by ECPA.  *Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992).  Thus, the defendant must know that there was an interception and that no exception to liability for that interception exists.

This is a standard that Plaintiff cannot meet.  Plaintiff does not (and cannot) allege any association between Google and the Hacker from which Google could possibly have known how the Hacker or Co-Conspirators obtained the information in question.  Although Plaintiff pleads that it notified Google that "certain postings" on its websites "are Misappropriated Trade Secrets," Plaintiff never even alleges that it informed Google of an "interception," much less that it informed Google of detailed facts concerning the circumstances of an "interception" that would allow Google to reasonably conclude that the interception was prohibited by ECPA, *and* occurred within the United States, *and* was not subject to any

exceptions.[7] *See* 18 U.S.C. § 2511(2)(a)-(i) (listing numerous exceptions to wiretap prohibitions).  Indeed, the FAC itself does not even include any such factual allegations, as its sparse statements regarding "interception" simply parrot legal conclusions devoid of any factual support.

Plaintiff has not pleaded facts that satisfy any of the foregoing requirements for alleging that Google had the requisite knowledge to impose liability for use or disclosure of allegedly intercepted material.  Further, Plaintiff will be unable to allege facts that clear any, let alone all, of these hurdles.  Plaintiff's claim for violation of 18 U.S.C. § 2511 should thus be dismissed with prejudice.

**D.     ECPA Does Not Recognize Secondary Liability.**

Plaintiff's ECPA claim is especially deficient as to Google, as Plaintiff seeks to hold Google secondarily liable for others' conduct.  The Ninth Circuit has squarely rejected the idea that ECPA provides for a private cause of action against those who "aid and abet" principal violators of ECPA.  *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1002 (9th Cir. 2006) (addressing sections of ECPA other than 18 U.S.C. §§ 2511, 2720); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) (there is simply no secondary liability (such as aiding and abetting) under ECPA); *see also Doe v. GTE Corp.*, 347 F.3d 655, 658 (7th Cir. 2003) ("Normally federal courts refrain from creating secondary liability that is not specified by statute."); *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246 (10th Cir. 2012) (ECPA's imposition of civil liability "does not encompass aiders or abettors").

Plaintiff here is plainly attempting to hold Google liable as an aider or abettor of the actions of another.  By Plaintiff's account, it was the anonymous *Hacker* that supposedly intercepted Plaintiff's trade secrets (18 U.S.C.

---

[7] Tellingly, as of April 2018, when it filed the original Complaint, Plaintiff itself made no mention whatsoever of any purported interception in violation of 18 U.S.C. § 2511.  *See generally* Complaint.

1   § 2511(1)(a)) and the *Hacker* or one or more *Co-Conspirators* that used or

2   disclosed the purportedly intercepted communications (18 U.S.C. § 2511(1)(c)-

3   (d)).  All Google has done, according to the FAC, is offer its Blogger service to the

4   public, allowing third parties a platform through which to publicize content.  Even

5   if that were enough to make Google an aider and abettor of the alleged misdeeds of

6   Doe Defendants,[8] that does not support an ECPA claim against Google.  Google

7   cannot be sued under ECPA.

8   **III.   Plaintiff's Negligent Interference Claim Is Barred as Matter of Law as Preempted by the California Uniform Trade Secrets Act and is**

9   **Insufficiently Pleaded.**

10   Plaintiff's negligent interference claim is completely barred by Section 230

11   of the CDA.  Nevertheless, there are additionally two alternative bases for

12   dismissing Plaintiff's negligent interference claim.

13   First, this claim is preempted under California state law by the California

14   Uniform Trade Secrets Act (CUTSA).  Plaintiff's claim is based on an alleged

15   misappropriation of purported trade secrets.  Indeed, Plaintiff already asserts a

16   claim under CUTSA against the Doe Defendants.  *See* FAC ¶¶ 118-126.  But

17   CUTSA preempts alternative civil tort claims based on allegations of trade secret

18   misappropriation.  *See* Cal. Civ. Code § 3426.7(b).

19   "[Cal. Civ. Code §] 3426.7, subdivision (b), preempts common law claims

20   that are 'based on the same nucleus of facts as the misappropriation of trade secrets

21   claim for relief.'"  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,

22   171 Cal. App. 4th 939, 958 (2009) (quoting *Digital Envoy, Inc. v. Google, Inc.*,

23   370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)).  Here, Plaintiff has clearly

24   incorporated a purported standard of failing "to act with reasonable care in

25   

26   ―――――――――――――

27   [8] It is not.  *GTE Corp.*, 347 F.3d at 659 (A web host, typically indifferent to content

28   it transmits, "does not satisfy the ordinary understanding of culpable assistance to a wrongdoer" and consequently, "a web host cannot be classified as an aider and abettor of criminal activities conducted through access to the Internet.").

[Defendants'] conduct related to the Misappropriated Trade Secrets" into its negligent interference claim.  FAC ¶ 140.  Accordingly, Plaintiff's negligent interference claim is based on the same nucleus of facts as its misappropriation claim.  And, even though Plaintiff no longer pleads a CUTSA claim against Google, Plaintiff's decision to *not* plead the CUTSA claim is of no moment as to whether CUTSA preemption applies to this state common law claim.  *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 840 (N.D. Cal. 2014).

CUTSA preemption is not an abstract matter of form over substance – it prevents Plaintiff from evading the CUTSA's procedural, substantive, and remedial rules if this case proceeds.  For example, under the CUTSA, a plaintiff whose information has been released to the public cannot state a claim, *DVD Copy Control Ass'n, Inc . v. Bunner*, 116 Cal. App. 4th 241, 251 (2004) (widespread Internet postings destroyed secrecy), and CUTSA preemption ensures the Plaintiff does not avoid those consequences.  Further, under CUTSA, the scienter required for stating a claim is higher than mere negligence.  *See PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1382 (2000) ("[m]isappropriation of trade secrets is an intentional tort"); *Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706, at *3 (N.D. Cal. Oct. 9, 2013) (same).  Simply put, there is no such thing in California law as a negligent interference claim based on alleged trade secret misappropriation.  Additionally, under CUTSA, a defendant can recover fees and costs in cases where the plaintiff litigates in "bad faith," including those where the plaintiff sues over information that the plaintiff should have known was not a trade secret.  *See* Cal. Civ. Code § 3426.4; *Comput. Econ., Inc. v. Gartner Grp., Inc.*, No. 98-CV-0312 TW (CGA), 1999 WL 33178020, at *6-7 (S.D. Cal. Dec. 14, 1999) (defense awarded fees where plaintiff claimed trade secrets in non-secret information); *VSL Corp. v. Gen. Tech., Inc.*, 46 U.S.P.Q.2d 1356, 1359 (N.D. Cal. 1998) (same).  Plaintiff cannot avoid the consequences of its flimsy claim by alleging it under a different name.  For all the foregoing reasons, Plaintiff's

1  negligent interference claim is preempted by CUTSA and must be dismissed

2  accordingly.

3      Second, Plaintiff fails to plead facts supporting all the elements of a

4  negligent interference claim.  A negligent interference claim has four elements:

5          (1) an economic relationship existed between the plaintiff and a third
          party which contained a reasonably probable future economic benefit or
6          advantage to plaintiff; (2) the defendant knew of the existence of the
          relationship and was aware or should have been aware that if it did not
7          act with due care its actions would interfere with this relationship and
          cause plaintiff to lose in whole or in part the probable future economic
8          benefit or advantage of the relationship; (3) the defendant was
          negligent; and (4) such negligence caused damage to plaintiff in that
9          the relationship was actually interfered with or disrupted and plaintiff
          lost in whole or in part the economic benefits or advantage reasonably
10         expected from the relationship.

11  *N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 786 (1997).

12     Aside from bare legal conclusions that need not be presumed true, *Iqbal*, 556

13  U.S. at 681, Plaintiff does not plead a specific economic benefit or advantage that

14  Google's purported interference harmed.  *See Dolin v. Facebook, Inc.*, No. C 18-

15  0950 SBA, 2018 WL 2047766, at *3-4 (N.D. Cal. May 2, 2018) (plaintiff failed to

16  plead economic relationship).  Nor does Plaintiff allege facts demonstrating that

17  Google knew of such a relationship.  *Id.* at *4 (plaintiff's "speculative assertion"

18  that defendant knew of relationship is "insufficient to state a claim.").  For these

19  reasons too, Plaintiff's claim for negligent interference must be dismissed.[9]

20                    **CONCLUSION**

21     Plaintiff's claim for negligent interference and Plaintiff's claim for violation

22  of the Defend Trade Secrets Act should be dismissed with prejudice pursuant to

23  Section 230 of the CDA.  Plaintiff's claim for violation of ECPA (18 U.S.C.

24  § 2511) should be dismissed with prejudice because Plaintiff has not pleaded and

25  _____

26  [9] Plaintiff also purports to bring a vaguely stated claim for declaratory relief, which
    can be easily rejected.  "[I]t is well-established that the Declaratory Judgment Act
27  does not create an independent cause of action."  *ISE Entm't Corp. v. Longarzo*,
    No. CV 17-9132-MWF(JCx), 2018 WL 1569803, at *10 (C.D. Cal. Feb. 2, 2018)
28  (citations omitted) (internal quotation marks omitted).

1  cannot plead facts sufficient to state a claim.  Further, Plaintiff's claim for

2  negligent interference must also be dismissed pursuant to preemption under

3  CUTSA and for failure to state a claim.  Plaintiff has already amended once to

4  address deficiencies Google raised during the meet and confer process, and comes

5  no closer to pleading a viable cause of action.  Accordingly, further amendment

6  would be futile.  *See, e.g.*, *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d

7  1056, 1073 (C.D. Cal. 2017) (denying leave to amend when doing so would be

8  futile); *Ketab Corp. v. Mesriani & Assocs.*, No. 2:14-cv-07241-RSWL (MRW),

9  2015 WL 5050512, at *7 (C.D. Cal. Aug. 26, 2015) (dismissing case with

10  prejudice because "amendment would be futile in light of Plaintiff's implausible

11  allegations and theory of its action; [and] because amendment would allow

12  Plaintiff to continue to harass Defendants with meritless litigation"), *aff'd in*

13  *relevant part*, – F. App'x –, 2018 WL 2041424 (9th Cir. May 2, 2018).  Plaintiff's

14  claims in the FAC against Google should thus be dismissed with prejudice.

15

16  Dated:  July 6, 2018

    WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation

17

18

19  By:    /s/ Maura L. Rees

    Maura L. Rees
20  mrees@wsgr.com

21  Attorneys for Defendant
    GOOGLE LLC
22

23

24

25

26

27

28