1   Melinda M. Morton, SBN 209373
    mindy.morton@procopio.com
2   Jacob K. Poorman, SBN 262261
    jacob.poorman@procopio.com
3   PROCOPIO, CORY, HARGREAVES &
       SAVITCH LLP
4   1117 California Ave, Suite 200
    Palo Alto, CA 94304
5   Telephone:  (650) 645-9000
    Facsimile:   (619) 235-0398
6
    Attorney for Defendant
7   AUTOMATTIC INC.

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11  SPORT LISBOA E BENIFICA -        Case No. CV18-02978 RSWL-EX
    FUTEBOL SAD,
12                                   **DEFENDANT AUTOMATIC
              Plaintiff,             INC.'S NOTICE OF MOTION AND
13                                   MOTION TO DISMISS
    v.                               PLAINTIFF'S FIRST AMENDED
14                                   COMPLAINT PURSUANT TO
    JOHN DOE 1, AN UNKNOWN           12(B)(6); MEMORANDUM OF
15  PERSON OR ENTITY, ET AL.,        POINTS AND AUTHORITIES IN
                                     SUPPORT THEREOF**
16            Defendants.

17                                   Date:      August 28, 2018
                                     Time:      10:00 a.m.
18                                   Judge:     Hon. Ronald S.W. Lew
                                     Dept:      TBD
19
                                     Trial Date:  none set
20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................2

II.   FACTS ...............................................................................4

III.  LEGAL STANDARD ........................................................5

IV.   ARGUMENT ....................................................................6

    A.   Plaintiff's DTSA Claim Against Automattic Fails Because It Is Barred by Section 230, Automattic Did Not Disclose any Trade Secrets, and the Claim is Inadequately Plead ........................6

        1.   Automattic is Immune to Plaintiff's DTSA Claim under Section 230 because it Seeks to Treat Automattic as a Publisher of Third-Party Content ....................................7

        2.   Plaintiff Fails to State a DTSA Claim Against Automattic Because Automattic Neither Received Nor Possesses Any Trade Secrets ............................................................10

        3.   The FAC Does Not Adequately Allege that Automattic Knew Or Had Reason to Know that Plaintiff's Trade Secrets were Acquired by Improper Means or that they were Trade Secrets...12

    B.   Plaintiff Fails to State an ECPA Claim against Automattic Because Plaintiff has not Adequately Alleged Intent or an "In Flight" Interception of its Information, and There Is No Secondary Liability under the ECPA ....................................................................13

        1.   There are Insufficient Allegations of Intent to Support a Claim under the ECPA .............................................14

        2.   Plaintiff's ECPA Claim Fails Because Its Information Was Not Intercepted "In Flight" .......................................15

        3.   Plaintiff's ECPA Claim Fails Because It Attempts to Impose Secondary Liability on Automattic ...............................17

    C.   Plaintiff's Negligent Interference Claim Should Be Dismissed Because It Is Barred By Section 230, the FAC Does Not Adequately Allege It, and It Is Preempted By Plaintiff's CUTSA Claim ...............17

        1.   Plaintiff's Negligent Interference Claim Is Barred by Section 230...............................................................18

        2.   The FAC Does Not Adequately Allege a Claim for Negligent Interference ..........................................................18

        3.   The Negligent Interference Claim is Preempted by Plaintiff's Claim under CUTSA .............................................21

D.   Plaintiff's Claim for Declaratory Relief Should Be Dismissed Because there Is No Independent Claim for Declaratory Relief ...........22

V.   CONCLUSION ................................................................................22

AUTOMATTIC'S MOTION TO DISMISS THE FAC        CV18-02978 RSWL-E

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*
  790 F. Supp. 2d 1024 (N.D. Cal. 2011) ...................................................... 19,20,21

*Ashcroft v. Iqbal*
  556 U.S. 662, 677–78 (2009) ................................................................................. 5

*Barnes v. Yahoo!, Inc.*
  570 F.3d 1096 (9th Cir. 2009) .............................................................................. 8,9

*Batzel v. Smith*
  333 F.3d 1018 (9th Cir. 2003) .................................................................................. 7

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ........................................................................................... 5,14

*Carafano v. Metrosplash.com Inc.*
  207 F. Supp. 2d 1055 (C.D. Cal. 2002) .................................................................. 9

*Carafano v. Metrosplash.com, Inc.*
  339 F.3d 1119 (9th Cir. 2003) ......................................................................... 7,8,10

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*
  479 F.3d 1099 (9th Cir. 2007) ............................................................................... 19

*Digital Envoy, Inc. v. Google, Inc.*
  370 F.Supp.2d 1025 (N.D. Cal. 2005) .................................................................. 21

*DocMagic, Inc. v. Ellie Mae, Inc.*
  745 F.Supp.2d 1119 (N.D. Cal. 2010) .................................................................. 20

*Doe v. GTE Corp.*
  347 F.3d 655 (7th Cir. 2003) ................................................................................ 17

*Dumas v. Kipp*
  90 F.3d 386 (9th Cir. 1996) .................................................................................... 6

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*
  521 F.3d 1157 (9th Cir. 2008) ................................................................................ 8

iii

*Fraser v. Nationwide Mut. Ins. Co.*
    352 F.3d 107 (3d Cir. 2003) ............................................................... 15

*Gavra v. Google Inc.*
    12-CV-06547, 2013 WL 3788241 (N.D. Cal. July 17, 2013)................................. 9

*Google LLC v. Equustek Solutions, Inc.*
    No. 5:17-cv-04207, 2017 WL 5000834 (N.D. Cal. Nov. 2, 2017) ...................... 10

*Green v. AOL*
    318 F.3d 465 (3d Cir. 2003) ................................................................. 9

*GW Equity LLC v. Xcentric Ventures LLC*
    No. CIV.A.3:07-CV-976-O, 2009 WL 62173 (N.D. Tex. Jan. 9,
    2009) ................................................................................................ 10

*In re Carrier IQ, Inc.*
    78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015)........................................... 17

*ISE Entm't Corp. v. Longarzo*
    No. CV 17-9132-MWF(JCx), 2018 WL 1569803 (C.D. Cal. Feb. 2,
    2018) ................................................................................................ 22

*JH Kelly, LLC v. Tianwei New Energy Holdings Co., Ltd.*
    No. 4:13-368 BLW, 2014 WL 12599629 (D. Idaho Mar. 17, 2014) .............. 14,15

*Joude v. WordPress Foundation*
    2014 WL 3107441 (N.D. Cal., July 3, 2014, No. C 14-01656 LB) ....................... 8

*Jurin v. Google Inc.*
    695 F. Supp. 2d 1117 (E.D. Cal. 2010) ................................................... 18

*Kimzey v. Yelp Inc.*
    21 F. Supp. 3d 1120 (W.D. Wash. 2014), *aff'd* 836 F.3d 1263 .............................. 8

*Kimzy v. Yelp! Inc.*
    836 F.3d 1263 (9th Cir. 2016) ................................................................. 7

*Kirch v. Embarq Mgmt. Co.*
    10-CV-2047, 2011 WL 3651359 (D. Kan. Aug. 19, 2011) ................................. 17

*KLA-Tencor Corp. v. Murphy*
    717 F. Supp. 2d 895 (N.D. Cal. 2010)........................................... 14,15

iv

*Konop v. Hawaiian Airlines, Inc.*
  302 F.3d 868 (9th Cir. 2002) ........................................................................ 15,17

*Lopez v. Smith*
  203 F.3d 1122 (9th Cir. 2000) ............................................................................ 6

*Marder v. Lopez*
  450 F.3d 445 (9th Cir. 2006) ......................................................................... 6,11

*Muhammad v. Berreth*
  No. C 12-02407, 2012 WL 4838427 (N.D. Cal. Oct. 10, 2012) ......................... 22

*Navarro v. Block*
  250 F.3d 729 (9th Cir. 2001) ............................................................................. 5

*NetApp, Inc. v. Nimble Storage, Inc.*
  41 F. Supp. 3d 816, 840 (N.D. Cal. 2014)....................................................21,22

*Pappas v. Passias*
  887 F. Supp. 465 (E.D.N.Y. 1995) ................................................................... 16

*Parker v. Google, Inc.*
  422 F. Supp. 2d 492 (E.D. Pa. 2006).................................................................. 8

*Perfect 10, Inc. v. CCBill LLC*
  488 F.3d 1102 (9th Cir. 2007) .......................................................................... 10

*Ricci v. Teamsters Union Local 456*
  781 F.3d 25 (2d Cir. 2015) ................................................................................. 8

*Rich v. Shrader*
  No. 09-CV-0652, 2011 WL 4434852 (S.D. Cal. Sept. 22, 2011) .................... 6,11

*Rosal v. First Fed. Bank of California*
  671 F. Supp. 2d 1111 (N.D. Cal. 2009)............................................................. 16

*Ruckelshaus v. Monsanto Co.*
  467 U.S. 986 (1984) ........................................................................................ 13

*San Miguel v. HP Inc.*
  No. 5:16-CV-05820-EJD, 2018 WL 1536766 (N.D. Cal. Mar. 29,
  2018) .............................................................................................................. 20

*Shroyer v. New Cingular Wireless Servs., Inc.*
   622 F.3d 1035 (9th Cir. 2010) ............................................................5,11

*Sikhs for Justice, Inc. v. Facebook, Inc.*
   697 Fed. App'x. 526 (9th Cir. 2017) ....................................................7

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*
   983 F.Supp. 1303 (N.D. Cal. 1997)......................................................20

*Stevo Design, Inc. v. SBR Mktg. Ltd.*
   919 F. Supp. 2d 1112 (D. Nev. 2013) .............................................10,18

*SunPower Corp. v. SolarCity Corp.*
   No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11,
   2012) ......................................................................................................20

*Sybersound Records*, 517 F.3d at 1151 (9th Cir.) ................................20,21

*United States v. Steiger*
   318 F.3d 1039 (11th Cir. 2003) ...........................................................16

*United States v. Townsend*
   987 F.2d 927 (2d Cir. 1993) ................................................................14

*Valentine v. WideOpen W. Fin., LLC*
   288 F.R.D. 407 (N.D. Ill. 2012) ..........................................................17

*Vistan Corp. v. Fadei USA, Inc.*
   No. C-10-4862 JCS, 2011 WL 1544796 (N.D. Cal. Apr. 25, 2011).....19

*Yagman v. Galipo*
   No. CV L2-7908-GW SHX, 2013 WL 1287409 (C.D. Cal. Mar. 25,
   2013) ......................................................................................................19

*Zeran v. America Online, Inc.*
   129 F.3d. 327 (4th Cir. 1997) .............................................................2

**STATE CASES**

*Asia Econ. Inst. v. Xcentric Ventures LLC*
   No. CV 10-01360 SVW PJWX, 2011 WL 2469822, at *7 (C.D. Cal.
   May 4, 2011)..........................................................................................18

*Cross v. Facebook, Inc.*
  14 Cal. App. 5th 190, 207, 222 Cal. Rptr. 3d 250 (Ct. App. 2017) ...................... 18

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*
  184 Cal. App. 4th 210 (2010) ................................................................ 21

*Silvaco Data Sys. V. Intel Corp.*
  171 Cal. App. 4th 939 (2009) ................................................................ 22

*Westside Center Assoc. v. Safeway Stores 23, Inc.*
  42 Cal.App.4th 507, 49 Cal.Rptr.2d 793 (1996) ...................................... 19

FEDERAL STATUTES, REGULATIONS, AND RULES

18 U.S.C.
  § 1836 .................................................................................................... 6
  § 1839(3) .............................................................................................. 11
  § 1839(5) .............................................................................................. 12
  § 2511(1)(a)-(d) .................................................................................... 14
  § 2511(1)(c)-(d) ............................................................................... 13,14

28 U.S.C.
  § 2201-2202 ......................................................................................... 22

47 U.S.C.
  § 230 ...................................................................................................... 2
  § 230(c) .................................................................................................. 7
  § 230(c)(1) .............................................................................................. 7
  § 230(f)(2) .............................................................................................. 8

Federal Rules of Civil Procedure
  8(a)(2) ..................................................................................................... 5
  12(b)(6) ................................................................................................... 6

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 28, 2018 at 10:00 a.m. in the U.S. District Court for the Central District of California, Courtroom [TBD], before the Honorable Judge Ronald S.W. Lew, at 350 W. 1st Street, 4th Floor, Los Angeles, California 90012, Defendant Automattic Inc. ("Automattic" or "Defendant") shall and shall and hereby does move for an order dismissing the First Amended Complaint as to Automattic pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

This Motion is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Jacob K. Poorman, and supporting documents, the papers on file in this action, and any other submissions or arguments as may be presented to the Court.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 28, 2018.

Dated:  July 6, 2018

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP


By:  /s/ *Melinda M. Morton*
Melinda M. Morton

Attorneys for Defendant
AUTOMATTIC INC.

AUTOMATTIC'S MOTION TO DISMISS THE FAC          CV18-02978 RSWL-E
DOCS 3349957.2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff, allegedly a Portuguese "multisport" club best known for its soccer team, by its own admission, has hauled Automattic into this Court because an unknown hacker infiltrated its computer network in Portugal, obtained Plaintiff's trade secrets and other confidential information, and then posted the trade secrets and confidential information on numerous websites, including WordPress.com, the hosting platform operated by Automattic.  Plaintiff does not claim that Automattic assisted or was in any way involved in the alleged hacking.  Nor has Plaintiff alleged that Automattic generated any of the content posted to the relevant WordPress.com website  (www.mercadobeneficapolvo.wordpress.com  [the  "Blog"]).     Plaintiff nevertheless seeks damages and injunctive relief against Automattic for its bare acts of (1) hosting third-party information, and (2) not removing that information.  This conduct, for a number of reasons, cannot support any of the four causes of action Plaintiff has alleged against Automattic.

Plaintiff's claims for negligent interference with prospective economic advantage and its Defend Trade Secrets Act ("DTSA") claim are prohibited by Section 230 of the Communications Decency Act.  47 U.S.C. § 230 ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.").  Section 230 bars claims that seek "to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content."  *Zeran v. America Online, Inc.*, 129 F.3d. 327, 330 (4th Cir. 1997).  As both claims allege nothing more than a failure to remove content, they must be dismissed.

The DTSA claim also fails to allege sufficient facts that Automattic misappropriated any trade secrets – the FAC claims that Automattic only learned

about Plaintiff's alleged trade secrets after they were posted to the internet. There are no allegations that Automattic "knew, or had reason to know" anything about the alleged trade secrets until after the hacker's act of misappropriation. To the extent Plaintiff alleges that Automattic's refusal to remove the alleged trade secrets is misappropriation, that claim fails because the trade secrets were extinguished when they were made publicly available on the internet. Further, the DTSA claim also fails because no trade secrets were ever even posted to WordPress.com. A cursory review of the Blog, referenced in the FAC, demonstrates that there is no information posted that could plausibly be a trade secret—there, for example, no soccer player contracts, no transaction, or business plan. Indeed, all but two posts to the Blog include nothing but a few lines of text and links to other websites. The two remaining posts contain nothing other than warnings not to post or publish Plaintiff's confidential information.[1]

Plaintiff's second claim against Automattic, under the ECPA, is fatally infirm. That claim only applies to those who intercept electronic communications while they are in transmission, or "in flight," with the conscious purpose of intercepting the electronic information. Plaintiff concedes that a third-party hacked into Plaintiff's *stored* files to obtain its communications instead of *intercepting* them, and even asserts a "Stored Communications Act" claim against the hackers, but then later asserts that the hacking was actually intercepted files "in flight." (FAC at ¶ 4.) The FAC, however, fails to include any non-conclusory allegations showing that Plaintiff's information was intercepted "in flight." Further, because Automattic did not allegedly learn about the material posted to the Blog until after it was posted, Automattic lacked the requisite intent to violate the ECPA. Finally, Plaintiff attempts to hold Automattic secondarily liable, because Automattic is not alleged to

---

[1] The Declaration of Jacob Kevin Poorman, submitted concurrently with this Motion, includes the full text of Blog in its original Portuguese, certified English translations of the two substantive posts, and the two substantive posts in their original Portuguese. *See* Exhibits A – F to the Declaration of Jacob Kevin Poorman.

AUTOMATTIC'S MOTION TO DISMISS THE FAC          CV18-02978 RSWL-E

1  have itself intercepted Plaintiff's information, but there is no such thing as secondary

2  liability under the ECPA.

3      Plaintiff's third claim against Automattic, for negligent interference with

4  prospective economic advantage, also falls far short of the *Twombly/Iqbal* standard.

5  The allegations are merely a laundry list of elements.  What is more, the negligent

6  interference claim is preempted by California's Uniform Trade Secrets Act

7  ("CUTSA"), which is the *only* civil remedy for conduct falling within its terms.

8  Because the negligent interference claim concerns the hosting/refusal to remove

9  trade secrets, it is based on the same nucleus of facts as a claim under CUTSA, and is

10  preempted.

11      Finally, Plaintiff's fourth claim against Automattic, for declaratory relief,

12  should be dismissed because the law does not recognize independent claims for

13  declaratory relief.

14  **II.    FACTS**

15      Automattic allegedly "owns and/or hosts the website located at the universal

16  resource locator ('URL') https://www.wordpress.com."  FAC at ¶ 8.  Plaintiff is a

17  Portuguese "multisport club" (FAC at ¶¶ 1, 6) that is allegedly aggrieved because an

18  unknown hacker (Defendant "John Doe 1") and "his/her/its co-conspirators . . .

19  unlawfully removed" "trade secrets, privileged and confidential information and

20  documents . . . ." from "within Plaintiff's protected computer network . . . ."  *Id.* at

21  ¶ 3.  Automattic's alleged connection to the hacking is through its hosting of the

22  Blog on WordPress.com.  More specifically, John Doe 1 and his co-conspirators are

23  alleged to have placed Plaintiff's trade secrets and confidential information on

24  https://mercadodebenficapolvo.wordpress.com/.  *Id.* at ¶¶ 28, 50.  Automattic

25  allegedly learned that this material had been posted to a wordpress.com website

26  when it was so-informed by Plaintiff's Portuguese counsel.  FAC at ¶¶ 27, 36, 75.

27  The only "conduct" for which Automattic is allegedly liable is that it has not

28  removed Plaintiff's information from the wordpress website.  *Id.*  The Blog contains

virtually no substantive information, and consists almost entirely of hyperlinked URL addresses to third-party websites.  *See* Declaration of Jacob Kevin Poorman ("Poorman Dec."), Ex. A.  Only two posts on the Blog appear to contain any information.  *Id*. at Exs. B – F.  One purports to be correspondence from Plaintiff's director of human resources to Plaintiff's "collaborators" (*Id.* at Exs. B, E); it admits that Plaintiff's information has been "disclosed" on the internet.  *Id.* at Ex. B.  The second, which purports to be correspondence from a law firm writing on Plaintiff's behalf to "social media bodies," admits that Plaintiff's information has been disclosed in the press, on television, and on the radio.  *Id.* at Exs. C, F.

## III.   <u>LEGAL STANDARD</u>

The Federal Rules require that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   However, the plaintiff's obligation to provide "the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (citation and quotation omitted).  Federal Rule 12(b)(6) tests the sufficiency of a party's allegations and requires dismissal "where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief."  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009)); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully . . .   When a complaint pleads facts that are merely consistent with a Defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 78 (quoting *Twombly*, 550 U.S. at 557)) (internal citations omitted).  Moreover, a court must dismiss a claim if "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro*, 250 F.3d at 732.  Leave to amend

defective claims must be denied if the court finds that an amendment would not cure the defects. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation and quotation omitted); *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

Although a 12(b)(6) motion is typically limited to the allegations in the complaint, Courts may consider evidence "on which the complaint 'necessarily relies' if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Rich v. Shrader*, No. 09-CV-0652, 2011 WL 4434852, at *4 (S.D. Cal. Sept. 22, 2011) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

## IV.  <u>ARGUMENT</u>

### A.  <u>Plaintiff's DTSA Claim Against Automattic Fails Because It Is Barred by Section 230, Automattic Did Not Disclose any Trade Secrets, and the Claim is Inadequately Plead</u>

Plaintiff's first claim against Automattic is for misappropriation of trade secrets under the DTSA, 18 U.S.C. § 1836, *et seq.* (Count Three of the FAC's thirteen claims).  The FAC, however, fails to state a DTSA claim for at least three reasons.  First, Automattic is immune to this claim as a matter of law under Section 230.  Section 230 provides that companies that host websites, like Automattic, cannot be held liable for publishing third-party content.  This is precisely what Plaintiff seeks to do here – impose liability on Automattic because it hosts a website that contains information allegedly posted by a third-party hacker.  Accordingly, Section 230 bars the DTSA claim.  Plaintiff also fails to state a claim under the DTSA because it has not alleged that Automattic has disclosed anything that could qualify as a trade secret.  The relevant website hosted by Automattic, which Plaintiff references in the FAC, contains no information that could plausibly be a trade secret, and consists almost entirely of links leading to other websites.  Plaintiff therefore fails to allege that Automattic acquired or disclosed any trade secrets.  Finally, there is no allegation that Automattic was aware that Plaintiff's information constituted trade secrets before it was allegedly so-informed by Plaintiff's counsel after it was

AUTOMATTIC'S MOTION TO DISMISS THE FAC          CV18-02978 RSWL-E

posted on the internet.  Accordingly, there is no allegation that Automattic was aware of the trade secrets before they were extinguished through public disclosure. Because of these three incurable problems, Plaintiff's DTSA claim against Automatic should be dismissed with prejudice.

> 1. <u>Automattic is Immune to Plaintiff's DTSA Claim under Section 230 because it Seeks to Treat Automattic as a Publisher of Third-Party Content</u>

Section 230 of the Communications Decency Act ("CDA") provides that "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 Fed. App'x. 526, 526 (9th Cir. 2017) (the CDA "provides interactive computer service providers immunity from civil liability when the claim is premised upon the provider's role as 'the publisher or speaker of any information provided by another information content provider.'").  Through this provision, Section 230 "immunizes providers of interactive computer services against liability arising from content created by third parties." *Kimzy v. Yelp! Inc.*, 836 F.3d 1263, 1265 (9th Cir. 2016) (citation omitted); *see Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) ("Under Section 230(c), therefore, so long as a third party willingly provides the essential published content, the interactive service provider receives *full immunity*.") (emphasis added).  Section 230 reflects congressional recognition that the "amount of information communicated via interactive computer services" like Automatic, is "staggering" and that even the "specter of tort liability" for this "prolific" third-party speech "would have an obvious chilling effect," forcing interactive computer services to "severely restrict" the type and amount of information they are willing to host. *Carafano*, 339 F.3d at 1123-24 (citation and internal quotation marks omitted). Accordingly, Congress enacted Section 230 "to further First Amendment and e-commerce interests on the internet." *Batzel v. Smith*, 333 F.3d 1018, 1028 (9th Cir. 2003).

AUTOMATTIC'S MOTION TO DISMISS THE FAC        CV18-02978 RSWL-E

There can be little doubt that Automattic is an "interactive computer service" that is entitled to Section 230 immunity. *See Joude v. WordPress Foundation*, 2014 WL 3107441, at *6 (N.D. Cal., July 3, 2014, No. C 14-01656 LB) ("Section 230 of the Communications Decency Act of 1996 grants immunity to providers like Automattic for publishing content created by third parties.")   An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ."  47 U.S.C. § 230(f)(2).  Per the FAC, Automattic is alleged to host a website (the Blog) on which an individual posted content that that was created/supplied by a third party (Plaintiff/the hacker).  FAC at ¶¶ 8 ("Automattic owns and/or hosts the website located at the [URL] https://wordpress.com"); 28 ("Some of the Misappropriated Trade Secrets were uploaded onto webpages within the website located at the URL https://www.wordpress.com . . ."); 29 ("Some of the Misappropriated Trade Secrets were made available to the public by posting links to webpages within the website located at the URL https://www.wordpress.com . . .").  Accordingly, Automattic is an "interactive computer service" under Section 230.  *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162  (9th Cir. 2008) (if a website provider displays content "created entirely by third parties, then it is only a service provider with respect to that content."); *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 27-28 (2d Cir. 2015) (finding that website hosting service was an "interactive computer service provider); *see Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (courts have adopted "a relatively expansive definition of 'interactive computer service'"); *see also Kimzey v. Yelp Inc.*, 21 F. Supp. 3d 1120 (W.D. Wash. 2014), *aff'd* 836 F.3d 1263 (website that hosted online review of businesses by customers was an interactive computer service provider within the meaning of the CDA); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009) (Yahoo qualifies as an interactive computer service provider); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006) ("no doubt Google

8

qualifies as an 'interactive computer service.'")

Similarly, there can be little doubt that Plaintiff's DTSA claim attempts to treat Automattic as the publisher of content posted by the third-party hacker, in contravention of Section 230.  Plaintiff contends that Automattic is liable for misappropriation because a hacker posted Plaintiff's trade secrets on a website Automattic allegedly "owns or hosts," and Automattic has not removed it.  FAC ¶ 8, 28-29, 70, 75.  Hosting third-party content, and deciding whether to remove such content, however, is *precisely* what a publisher does.  *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102-03 (9th Cir. 2009) ("[P]ublication involves reviewing, editing, and deciding whether to publish or withdraw from publication third-party content. . . . Because "removing content is something publishers do, [] impos[ing] liability on the basis of such conduct necessarily involved treating the liable party as a publisher of the content it failed to remove."); *Green v. AOL*, 318 F.3d 465, 471 (3d Cir. 2003) ("monitoring, screening, and deletion of content" are "actions quintessentially related to a publisher's role" and "Section 230 specifically proscribed liability in such circumstances.") (citation and internal quotation marks omitted); *Carafano v. Metrosplash.com Inc.*, 207 F. Supp. 2d 1055, 1064 (C.D. Cal. 2002) ("[C]laims seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, post-pone or alter content—are barred."); *Gavra v. Google Inc.*, 12-CV-06547, 2013 WL 3788241, at *3 (N.D. Cal. July 17, 2013) ("Section 230 of the CDA was intended to protect websites against the evil of liability for failure to remove offensive content. . . . Google has assumed no affirmative duty to protect Plaintiffs from extortion and to remove the videos, and, even if it had, any such duty would have arisen from its role as a publisher.  The CDA protects Google in all these instances.") (citation and quotations omitted).  Accordingly, Plaintiff's theory of DTSA liability depends on treating Automattic as a publisher of third-party content, and therefore is squarely covered by Section 230 immunity.

Courts considering the application of Section 230 to trade secret misappropriation and other intellectual property claims routinely reach the same conclusion. For example, in *Stevo Design, Inc. v. SBR Mktg. Ltd.*, plaintiff asserted a claim for misappropriation because a third-party had allegedly posted plaintiff's trade secrets to defendant's website. 919 F. Supp. 2d 1112 (D. Nev. 2013). This claim, however, did not withstand Section 230 because hosting third-party content is "publish[ing]" under the CDA, and therefore immune. *Id.* at 1126–27; *see GW Equity LLC v. Xcentric Ventures LLC*, No. CIV.A.3:07-CV-976-O, 2009 WL 62173, at *5 (N.D. Tex. Jan. 9, 2009) (finding immunity under Section 230 for trade secret claim based on hosting of third-party content); *see also Google LLC v. Equustek Solutions, Inc.*, No. 5:17-cv-04207, 2017 WL 5000834, at *3 (N.D. Cal. Nov. 2, 2017) (enjoining Canadian judgment requiring Google to remove trade secret information); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007) (finding that Section 230 applies to state intellectual property laws and applying it to a right of publicity claim); *see Carafano*, 339 F.3d at 1122 (complaint alleged "invasion of privacy, misappropriation of the right of publicity, defamation, and negligence" against internet service, which are preempted by Section 230).[2]

> 2. <u>Plaintiff Fails to State a DTSA Claim Against Automattic Because Automattic Neither Received Nor Possesses Any Trade Secrets</u>

Plaintiff's DTSA claim also fails for the simple fact that no trade secrets appear on the Blog. The FAC alleges that "[s]ome of the Misappropriated Trade Secrets were uploaded onto webpages within the website located at the URL https://www.wordpress.com," which is allegedly owned and/or operated by Automattic. FAC at ¶ 28. This conclusory allegation, however, is belied by the actual content of the Blog, which is referenced in the FAC. The Blog consists almost

---

[2] Section 230 does not apply to claims under Federal intellectual property laws, but the DTSA is not an intellectual property law. *See* PL114-153, May 11, 2016, 130 Stat 376 (Section 2(g)) (The DTSA "shall not be construed to be a law pertaining to intellectual property for purposes of any other Act of Congress.").

entirely of links to other websites (that Automattic does not even allegedly own or operate), and contains no substantive information. Automattic, therefore, has never hosted, "receiv[ed]" or "possess[ed]" any of Plaintiff's trade secrets (FAC at ¶ 70), and that claim fails.[3]

Under the DTSA, a trade secret is information that "derives independent economic value . . . from not being generally known," and that "the owner thereof has taken reasonable measures to keep" secret. 18 U.S.C. § 1839(3). Here, the trade secrets allegedly consist of "information and trade secrets owned by Plaintiff that have been developed at great expense to Plaintiff used in operating a professional football team." FAC at ¶¶ 2, 71-72. Nothing on the Blog (https://mercadodebenficapolvo.wordpress.com/), however, bears any resemblance to the trade secrets Plaintiff alleges, and nothing could plausibly be construed as even potentially valuable information. *See Shroyer,* 622 F.3d at 1041 (a complaint must contain "sufficient factual matter" to make plaintiff's claims "plausible"). The vast majority of the website consists of hyperlinked URL addresses for websites that are not allegedly affiliated with Automattic. Poorman Dec., Ex. A.

There is no genuine allegation that the alleged trade secrets were ever even posted to a website owned and/or controlled by Automattic. There are therefore insufficient allegations to support Plaintiff's DTSA claim against Automattic, and that claim should be dismissed. Because Plaintiff cannot plead around what is plain

---

[3] It is proper to consider the content of the website, in addition to the allegations on the face of the FAC, in assessing this 12(b)(6) motion because Plaintiffs have referenced it in the FAC and their claims necessarily rely upon it. Courts may consider evidence "on which the complaint 'necessarily relies' if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Rich*, 2011 WL 4434852, at *4 (quoting *Marder*, 450 F.3d at 448). Here, the FAC refers to the website (see FAC at ¶ 50), the website is central to Plaintiff's claim against Automattic (Automattic's alleged conduct is limited to owning/operating the website and refusing to remove content from it), and Plaintiff cannot, in good faith, challenge the authenticity of a document that is publicly-available on the internet. Accordingly, this Court should consider the wordpress.com website in weighing the sufficiency of Plaintiff's allegations.

AUTOMATTIC'S MOTION TO DISMISS THE FAC          CV18-02978 RSWL-E

1  to see from the website, such dismissal should be with prejudice.   If Plaintiff

2  contends otherwise, it should, at a minimum, identify in its Opposition where the

3  trade secrets can be found on the wordpress website.  If they cannot, then there is no

4  reason for this Court and the parties to waste time belaboring this claim.

5         3.    <u>The FAC Does Not Adequately Allege that Automattic Knew Or
        Had Reason to Know that Plaintiff's Trade Secrets were Acquired
6        by Improper Means or that they were Trade Secrets</u>

7         The FAC presents no facts that that Automattic misappropriated any trade

8  secrets. Under the DTSA, misappropriation is defined as:  (1) acquisition of the trade

9  secret by someone who knows, or had reason to know, that the acquisition was made

10 through improper means, (2) disclosure or use of information acquired through

11 improper means, or acquired from a third party by someone who knows, or had

12 reason to know, that the third party used improper means to acquire the information,

13 or (3) a material change of position after the defendant knew, or should have known,

14 that it had acquired a trade secret by accident or mistake.   18 U.S.C. § 1839(5).

15 Accordingly, a defendant cannot be liable under DTSA unless it acquired trade

16 secrets through improper means, obtained information from a third-party it knew, or

17 had reason to know, acquired the trade secret using improper means, or materially

18 changed its position after it knew, or had reason to know, that information it had

19 inadvertently acquired was trade secret. *Id.*

20        Although the FAC contains conclusory allegations about defendants "stealing"

21 the trade secrets, nowhere does the FAC allege that Automattic, itself, took any

22 action to acquire the trade secrets.  The FAC alleges that another party, a third-party

23 hacker (Defendant John Doe 1), took the information from Plaintiff's email storage

24 and posted it to a particular wordpress.com website allegedly owned and/or operated

25 by Automattic.  Since Automattic is not alleged to have acquired the trade secrets

26 itself, it therefore could not have acquired them through wrongful means.

27 If there is liability for Automattic under the DTSA, then, Plaintiff has to allege that

28 Automattic knew, or should have known, that the information was acquired by

12

improper means, or that it was a trade secret.  The FAC, however, contradicts this notion. Plaintiff alleges that Automattic learned that Plaintiff's trade secrets had been posted by hackers when it was so informed by Plaintiff's Portuguese counsel as part of their request to remove the content.  FAC at ¶¶ 27, 36, 75.  Automattic therefore *could not have known* about the trade secrets, or the allegedly wrongful acquisition of them, when the material was posted—and therefore could not plausibly be liable under the DTSA.  Automattic did not "know or have reason to know" about the trade secrets or alleged wrongful acquisition when the disclosure/use (the posting) occurred.

Automattic is not alleged to have taken any subsequent steps to use or disclose the information; it merely has not removed it.  To the extent Plaintiff nevertheless seeks to base its DTSA claim on the non-removal, that claim fails as a matter of law. When Plaintiff's information was publicly disclosed on the internet, any trade secret protection extinguished.  *See, e.g.*, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("Information that is public knowledge or that is generally known in an industry cannot be a trade secret."); *see also* Poorman Dec. Exs. B, C, E & F (admitting that Plaintiff's trade secrets were disclosed on the internet, in the press, on television, and on radio).  Therefore, after the information was posted, it was no longer a trade secret, and any subsequent conduct by Automattic is not actionable under the DTSA.

**B.**    **Plaintiff Fails to State an ECPA Claim against Automattic Because Plaintiff has not Adequately Alleged Intent or an "In Flight" Interception of its Information, and There Is No Secondary Liability under the ECPA**

Plaintiff contends that Automattic violated Section 2511(1)(c)-(d) of the ECPA by "intentionally disclos[ing] and us[ing]" the contents of Plaintiff's (alleged) trade secrets.  FAC at ¶ 90.  This claim is defective.  First, although Plaintiff makes the conclusory allegation that Automattic "intentionally" disclosed the trade secrets,

---

AUTOMATTIC'S MOTION TO DISMISS THE FAC          CV18-02978 RSWL-E

there are no plausible allegations that Automattic had the necessary "intent" under the ECPA – a conscious objective to intercept private communications.   Second, Plaintiff's ECPA claim requires proof that its information was intercepted in transit, instead of obtained from storage.   The FAC, however, alleges that Plaintiff's information was taken from stored data.   Finally, Plaintiff's ECPA claim seeks to hold Automattic secondarily-liable for the acts of other defendants, but there simply is no secondary liability under the ECPA.   The ECPA claim should be dismissed.

1.   <u>There are Insufficient Allegations of Intent to Support a Claim under the ECPA</u>

Each theory of ECPA liability pled in the complaint requires intent.   *See* 18 U.S.C. § 2511(1)(a) ("intentionally intercepted . . ."); (1)(b) ("intentionally used . . ."); (1)(c) ("intentionally disclosed"); (1)(d) ("intentionally used . . ."comma   More specifically, the theories asserted against Automattic (§ 2511(1)(c) & (d)), require intentional disclosure and use, respectively, *and* that Automattic knew or had reason to know that the information was obtained "through the interception" of electronic communication "in violation of" the ECPA.   For purposes of the ECPA, "intentionally" does not just mean "purposefully;" it means having the "conscious objective" to disclose or use electronic communications.   *See KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 905 (N.D. Cal. 2010) ("[T]he [ECPA's] legislative history indicates that the term 'intentional' is narrower than the dictionary definition and requires that the defendant have as a conscious objective the conduct or the causing of the result."); *United States v. Townsend*, 987 F.2d 927, 930 (2d Cir. 1993) (to violate the ECPA, the "defendant's act must have been the product of defendant's conscious objective rather than the product of a mistake or an accident").

Plaintiff alleged that Automattic acted "intentionally" in disclosing or using Plaintiff's information.   This is, however, just a label, and there are no well-pled facts to support it.   *Twombly*, 550 U.S. at 555 ("the grounds of his entitlement to relief requires more than labels and conclusions"); *see JH Kelly, LLC v. Tianwei New*

14

DOCS 3349957.2

*Energy Holdings Co., Ltd.*, No. 4:13-368 BLW, 2014 WL 12599629, at *3 (D. Idaho Mar. 17, 2014) (conclusory allegation of intent without well-pled factual allegations establishing knowledge insufficient to survive motion to dismiss).  For example, there are no facts to indicate that Automattic was aware that Plaintiff's information had been posted to a wordpress.com website, that Automattic was even specifically aware of the website in question, or that Automattic knew or should have known that the material was collected in violation of the ECPA (which it was not, *see* Section IV.B.2, *infra*), until they were allegedly notified as such by Plaintiff's Portuguese counsel at some point after the material was already posted.  FAC at ¶ 99. Accordingly, Plaintiff has not sufficiently alleged that when its information was posted to the Blog – the alleged act of disclosure/use – Automattic either intended for that to happen, or knew or should have known that the material was obtained in violation of the ECPA.  Plaintiff therefore has failed to state a claim under the ECPA against Automattic, and that claim should be dismissed.  *See KLA-Tencor Corp.*, 717 F. Supp. 2d at 905 ("Plaintiff has presented no evidence that Chen . . . knew that their conduct would result in the deletion of data . . . Without such evidence, there remains a question of fact whether it was Chen's conscious objective to delete emails . . . .").

> ### 2.   Plaintiff's ECPA Claim Fails Because Its Information Was Not Intercepted "In Flight"

Plaintiff must also demonstrate that its electronic communications were "intercepted."  *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (The Wiretap Act "prohibits only 'interceptions' of electronic communications"). For communications to be "intercepted," they must be obtained while they are in transmission, or "in flight," as opposed to in storage.  *Konop*, 302 F.3d at 878 ("[F]or a website such as Konop's to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage."); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003) ("Every circuit court to

have considered the matter has held that an 'intercept' under the ECPA must occur contemporaneously with transmission."); *see United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003) ("very few seizures of electronic communications from computers will constitute 'interceptions'" because "[t]here is only a narrow window during which an E-mail interception may occur—the seconds or milliseconds before which a newly composed message is saved to any temporary location following a send command. . . . "interception of E-mail within the prohibition of [the Wiretap Act] is virtually impossible.") *Id.* (citations and internal quotations marks omitted).

The FAC is clear:  a hacker, Defendant John Doe 1, "obtained access" to Plaintiff's information by phishing[4] for "login access" credentials that enabled Doe to access the information "in electronic storage[.]" FAC at ¶¶ 55, 91; *see also id.* ¶ 3 (Hacker "unlawfully removed contents from Plaintiff's protected computer network" and "improperly acquired Plaintiff's trade secrets . . . located *within* Plaintiff's protected computer network") (emphasis added).  Plaintiff does not plead sufficient facts showing that the e-mails (or any other information) were obtained while in transmission (i.e., while they were "in flight"), as opposed to while they were in storage.  The FAC conclusorily asserts that Plaintiff's emails were "intercepted" (*id.* at ¶¶ 91, 95) but those allegations are simply not credible in light of allegations spelling out exactly what the hacker allegedly did – access stored information.  FAC at ¶¶ 55, 91.  *See Pappas v. Passias*, 887 F. Supp. 465, 472–73 (E.D.N.Y. 1995) (allegation of harm to pecuniary interest insufficient where "detailed factual allegations" were to the contrary); *see also Rosal v. First Fed. Bank of California,* 671 F. Supp. 2d 1111, 1130–31 (N.D. Cal. 2009) (vague and conclusory allegations cannot withstand motion to dismiss).  Plaintiff, accordingly, has failed to state a claim under the ECPA, and its ECPA claim must be dismissed.

---

[4]  https://en.wikipedia.org/wiki/Phishing ("Phishing is the fraudulent attempt to obtain sensitive information such as usernames, passwords, and credit card details (and money), often for malicious reasons, by disguising as a trustworthy entity in an electronic communication.")

AUTOMATTIC'S MOTION TO DISMISS THE FAC        CV18-02978 RSWL-E

3.  Plaintiff's ECPA Claim Fails Because It Attempts to Impose Secondary Liability on Automattic.

Plaintiff's ECPA claim seeks to hold Automattic secondarily liable for the acts of a hacker that has no alleged affiliation with Automattic.  The FAC alleges that the hacker obtained Plaintiff's information and posted it on a particular wordpress.com website.   FAC at ¶¶ 4-5, 28-29, 50.  Automattic is not alleged to have taken any action with respect to this information; it is merely alleged to have not removed the information on demand.  FAC at ¶¶ 27, 36.  The relevant section of the ECPA, however, "prohibits only 'interceptions' of electronic communications[.]"  *Konop*, 302 F.3d at 878.  Accordingly, Automattic can only be liable on Plaintiff's ECPA claim if it bears some secondary liability for the hacker's alleged interceptions. There is, however, no secondary liability under the NDA.  *See Doe v. GTE Corp.*, 347 F.3d 655, 658-59 (7th Cir. 2003) (no "aiding and abetting" liability under the ECPA for host of website on which pornographic material was posted); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) ("there is simply no secondary liability (such as aiding and abetting) under the ECPA"); *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 412 (N.D. Ill. 2012) ("[C]ourts have declined to find a private cause of action against those who aid and abet or conspire with others to intercept, disclose, or use electronic communications in violation of the ECPA.") (citing cases); *Kirch v. Embarq Mgmt. Co.*, 10-CV-2047, 2011 WL 3651359, at *7 (D. Kan. Aug. 19, 2011) ("[T]he ECPA, however, does not provide for secondary liability, as liability attaches only to the party that actually intercepted a communication.").   Accordingly, Plaintiff's theory of ECPA liability as to Automattic is not cognizable under that statute, and this claim should be dismissed.

**C.   Plaintiff's Negligent Interference Claim Should Be Dismissed Because It Is Barred By Section 230, the FAC Does Not Adequately Allege It, and It Is Preempted By Plaintiff's CUTSA Claim**

Plaintiff's third claim against Automattic is for negligent interference with prospective economic advantage.  That claim fails on three grounds.  First, it is

17

barred by Section 230.   Second, the FAC fails to adequately allege negligent interference.  Third, Plaintiff's negligent interference claim is preempted by its claim under CUTSA.  The negligent interference claim should therefore be dismissed.

1.   Plaintiff's Negligent Interference Claim Is Barred by Section 230

The negligent interference claim is subject to dismissal because of Section 230 for the same reason as Plaintiff's DTSA claim:  Automattic's only alleged negligent conduct is hosting/not removing Plaintiff's information.  Accordingly, Plaintiff seeks to hold Automattic liable for hosting and/or refusing to remove information, which are quintessentially the acts of a publisher.  *See Stevo Design*, 919 F. Supp. 2d at 1128 ("the only interference that the court may plausibly infer involves SBR's publication of Stevo's sports analysis[,]. [b]ut [] this cause of action depends on SBR's status as publisher as well.").  The negligent interference claim is therefore barred by Section 230, as a number of courts have found.  *See Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1123 (E.D. Cal. 2010) (dismissing negligent interference claim as barred by the CDA); *Asia Econ. Inst. v. Xcentric Ventures LLC*, No. CV 10-01360 SVW PJWX, 2011 WL 2469822, at \*7 (C.D. Cal. May 4, 2011) (same); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 207, 222 Cal. Rptr. 3d 250, 264 (Ct. App. 2017), *review denied* (Oct. 25, 2017) (affirming demurrer of negligent interference claim under the CDA).

2.   The FAC Does Not Adequately Allege a Claim for Negligent Interference

The negligent interference claim should also be dismissed for another reason, namely, that Plaintiff has not adequately alleged it.

A claim for tortious interference requires proof that, among other things, plaintiff was in an economic relationship with a third party that probably would have resulted in a future economic benefit, defendant knew or should have known about this relationship, defendant knew or should have known that the relationship would be disrupted by a failure to exercise reasonable care, defendant's conduct was

18

independently wrongful, the relationship was disrupted, and harm resulted to plaintiff. CACI § 2204; *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107–08 (9th Cir. 2007) ("[I]nterference with prospective economic advantage requires ... an act that is wrongful independent of the interference itself.") (citation omitted).

Plaintiff offers no well-pled facts in support of this claim, instead alleging a formulaic, and unadorned, recitation of most of the requisite elements. This is not enough. *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1032 (N.D. Cal. 2011) (dismissing tortious interference claim based on allegations that were "little more than a conclusory restatement of the elements of a tortious interference claim."); *Yagman v. Galipo*, No. CV L2-7908-GW SHX, 2013 WL 1287409, at *5 (C.D. Cal. Mar. 25, 2013). Unsurprisingly, given that the root of Plaintiff's claim is hacking by a third party, there are inadequate allegations as to independently wrongful conduct, prospective economic relationships, Automattic's knowledge of those relationships, disruption, and harm.

Plaintiff fails even to make the bare assertion that Automattic engaged in conduct that is "wrongful independent of the interference itself." *CRST Van Expedited*, 479 F.3d at 1107–08 (9th Cir. 2007); *Vistan Corp. v. Fadei USA, Inc.*, No. C-10-4862 JCS, 2011 WL 1544796, at *9 (N.D. Cal. Apr. 25, 2011) ("The basic elements for a tort of intentional interference with prospective economic advantage have not been alleged adequately . . . there is no allegation regarding whether the Plaintiff's alleged conduct is 'independently wrongful.'"). Its allegations are therefore insufficient to support a negligent interference claim.

Moreover, Plaintiff's allegation regarding prospective economic relationships is also insufficient because it does not identify a single third-party with whom it had a disrupted economic relationship. A claim for negligent interference cannot rely on an allegation that defendant "interfere[d] with the market," (*Westside Center Assoc. v. Safeway Stores 23, Inc.*, 42 Cal.App.4th 507, 527–28, 49 Cal.Rptr.2d 793 (1996)),

AUTOMATTIC'S MOTION TO DISMISS THE FAC          CV18-02978 RSWL-E

but must instead identify specific economic relationships that were subject to interference. *Sybersound Records*, 517 F.3d at 1151 (9th Cir.) (finding insufficient the "conclusory" allegations that the plaintiff "has been harmed because its ongoing business and economic relationships with Customers have been disrupted" because plaintiff did not "allege, for example, that it lost a contract nor that a negotiation with a Customer failed."); *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *15 (N.D. Cal. Dec. 11, 2012) (dismissing claim for interference with prospective economic advantage because plaintiff did "not identif[y] any specific customer relationship with which [defendant] interfered"); *Amaretto Ranch*, 790 F. Supp. 2d at 1032 (dismissing claim where plaintiffs "do not allege any particular lost contracts or failed negotiations or even a failure to meet reasonable sales projections that can be plausibly tied to defendant's actions"); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F.Supp.2d 1119, 1154 (N.D. Cal. 2010) ("[The intentional interference with prospective economic advantage] cause of action must be dismissed for failure to identify at least one specific, ongoing business relationship that was disputed ...."); *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1312 (N.D. Cal. 1997). Plaintiff has failed to do that here, instead alleging generally that it has economic relationships with its "customers, fans, staff, players, advertisers, suppliers, sponsors, and/or vendors." FAC at ¶ 138.

In addition, Plaintiff's conclusory allegation as to Automattic's knowledge of these unknown third-party relationships is similarly insufficient (*see San Miguel v. HP Inc.*, No. 5:16-CV-05820-EJD, 2018 WL 1536766, at *13 (N.D. Cal. Mar. 29, 2018) ("Plaintiffs have not sufficiently alleged the existence and HP's knowledge of any actual prospective business relationship and accordingly, the claim is subject to dismissal."), as are its formulaic allegations regarding how Automattic allegedly disrupted Plaintiff's relationships, and Plaintiff's alleged resulting harm. *See SunPower Corp.*, 2012 WL 6160472, at *15 ("SunPower has not . . . alleged any facts regarding how SolarCity interfered with those customer relationships ");

AUTOMATTIC'S MOTION TO DISMISS THE FAC          CV18-02978 RSWL-E

*Amaretto Ranch*, 790 F. Supp. 2d at 1032 (allegations that (1) "Plaintiff is informed and believes that Defendants induced those existing and potential customers to purchase alternative products to Plaintiff's, thereby harming Plaintiff"; and (2) "Defendants ... falsely disparaged the quality of Plaintiff's products and [that] was a substantial cause of prospective purchasers of those products instead choosing to purchase others" do not adequately plead economic relationships, disruption, or harm). Indeed, Plaintiff's allegations are virtually indistinguishable from allegations that have been found inadequate by other courts. *See, e.g., Amaretto Ranch*, 790 F. Supp. 2d at 1032; *Sybersound Records*, 517 F.3d at 1151.

The FAC does not state a claim for negligent interference with prospective economic advantage, and that claim should be dismissed.

### 3. The Negligent Interference Claim is Preempted by Plaintiff's Claim under CUTSA

Plaintiff's claim for negligent interference is based on the same nucleus of facts as its claim under the California Uniform Trade Secrets Act ("CUTSA"). The former claim, just like the latter, is based on the alleged misappropriation of trade secrets, and is therefore preempted.

CUTSA preempts "common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)). In support of its negligent interference claim, Plaintiff alleges that Automattic misused Plaintiff's trade secrets. FAC ¶ 140. Accordingly, that claim is preempted by CUTSA, and should be dismissed. *K.C. Multimedia,* 171 Cal. App. 4th at 958. The fact that the FAC does not assert a CUTSA claim against Automattic does not alter this conclusion. Because CUTSA provides the "*exclusive civil remedy* for conduct falling within its terms,*"* preemption occurs whether or not the plaintiff has actually asserted a claim under CUTSA. *NetApp, Inc. v. Nimble Storage, Inc.*, 41

21

F. Supp. 3d 816, 840 (N.D. Cal. 2014) (quoting *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010)).

**D.**     **Plaintiff's Claim for Declaratory Relief Should Be Dismissed Because there Is No Independent Claim for Declaratory Relief**

Plaintiff's final claim against Automattic is for declaratory relief. FAC at ¶¶ 169-172. This claim falls with the others. "It is well-established that the Declaratory Judgment Act does not create an independent cause of action." *ISE Entm't Corp. v. Longarzo*, No. CV 17-9132-MWF(JCx), 2018 WL 1569803, at *10 (C.D. Cal. Feb. 2, 2018) (citations omitted) (internal quotation marks omitted); *Muhammad v. Berreth*, No. C 12-02407, 2012 WL 4838427, at *5 (N.D. Cal. Oct. 10, 2012) ("Declaratory relief is not an independent cause of action or theory of recovery, only a remedy) (citing 28 U.S.C. §§ 2201-2202); [more cites]. Moreover, the declaratory relief claim is not adequately alleged because it is completely unclear what Plaintiff is asking this Court to "declare."

**V.**    **CONCLUSION**

For the foregoing reasons, Automattic respectfully requests that the FAC be dismissed with prejudice.

Dated: July 6, 2018            PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By:   */s/ Melinda M. Morton*
        Melinda M. Morton

        Attorneys for Defendant
        AUTOMATTIC INC.

AUTOMATTIC'S MOTION TO DISMISS THE FAC      CV18-02978 RSWL-E