1  Robert J. Muller (SBN 189651)
     bob@cypressllp.com
2  Laurence Cheng (SBN 306299)
     larry@cypressllp.com
3  **CYPRESS LLP**
   Los Angeles, California 90025
4  Telephone:  424.901.0123
   Facsimile: 424.750.5100
5
   Steven Callahan (*Admitted Pro Hac Vice*)
6    scallahan@ccrglaw.com
   **CHARHON CALLAHAN**
7  **ROBSON & GARZA, PLLC**
   3333 Lee Parkway, Suite 460
8  Dallas, Texas 75219
   Telephone:  214.521.6400
9  Facsimile:  214.764.8392

10  *Counsel for Defendant Cloudflare, Inc.*

11                   UNITED STATES DISTRICT COURT

12                   CENTRAL DISTRICT OF CALIFORNIA

13

14

15  SPORT LISBOA E BENFICA -          )   CASE NO. 18-cv-02978-RSWL-E
    FUTEBOL SAD,                      )
16                                    )
                                      )   **CLOUDFLARE, INC.'S NOTICE**
17         Plaintiff,                 )   **OF MOTION AND MOTION TO**
                                      )   **DISMISS PLAINTIFF'S FIRST**
18      v.                            )   **AMENDED COMPLAINT AND**
                                      )   **MEMORANDUM OF POINTS**
19                                    )   **AND AUTHORITIES IN SUPPORT**
    JOHN DOE 1 ET AL.,                )   **THEREOF**
20                                    )
         Defendants.                  )
21                                    )
                                      )   Courtroom: TBD
22                                    )   Date: August 28, 2018
                                      )   Time: 10:00 a.m.
23                                    )   Judge: Hon. Ronald S.W. Lew
                                      )
24  _____  )

25

26

27

28

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on August 28, 2018 at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Ronald S.W. Lew of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant Cloudflare, Inc. ("Cloudflare") will and does hereby move for dismissal of the First Amended Complaint as to Cloudflare.

Plaintiff Sport Lisboa e Benfica Futebol Sad's ("Plaintiff") First Amended Complaint ("Complaint") as to Cloudflare fails to state a claim upon which relief can be granted. In particular:

A.    The Court should dismiss Plaintiff's Defend Trade Secrets Act Claim (Count 3) because Cloudflare is an interactive computer service provider immune from trade-secret liability for failure to remove Internet content under Section 230 of the Communications Decency Act and because Plaintiff otherwise fails to state a facially plausible claim.

B.    The Court should dismiss Plaintiff's Electronic Communications Privacy Act Claim (Count 4) because Plaintiff fails to plead a plausible claim.

C.    The Court should dismiss Plaintiff's Negligent Interference With Prospective Economic Advantage Claim (Count 8) because the claim fails under Section 230 of the Communications Decency Act; the California Uniform Trade Secrets Act preempts the claim; and the claim is facially implausible.

D.    The Court should dismiss Plaintiff's Declaratory Judgment Claim (Count 13) because the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, does not create an independent cause of action.

E.    The Court should dismiss the Complaint as to Cloudflare with prejudice and deny leave to amend on futility grounds because there is no basis in law to hold Cloudflare liable for Plaintiff's alleged injuries.

1    Cloudflare bases its Motion on this Notice, the Memorandum of Points and Au-
2    thorities filed herewith, all pleadings and papers on file in this action, and all matters
3    of which the Court may take judicial notice.

4    This Motion is made following a conference of counsel pursuant to L.R. 7-3
5    that took place on June 28, 2018.

6
7    Dated: July 6, 2018

8
9                                        By:    /s/ Steven C. Callahan
                                               Steven C. Callahan
10                                             Counsel for Defendant Cloudflare, Inc.
                                               E-mail: scallahan@ccrglaw.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.   Introduction ........................................................................................... 1

II.  Plaintiff's Complaint ........................................................................... 2

III. Argument ................................................................................................ 4

    A.   Motion To Dismiss Standard ....................................................... 4

    B.   The Court Should Dismiss Plaintiff's Defend Trade Secrets Act
        Claim (Count 3) ............................................................................. 4

        1.   Plaintiff's DTSA Claim Fails Under Section 230 Of The
            CDA ...................................................................................... 5

            a.   Cloudflare Is An Interactive Computer Service ................... 5

            b.   The Hacker Is An Information Content Provider ................. 6

            c.   Cloudflare Is Immune From DTSA Liability Because
                Plaintiff's Claims Would Require Cloudflare To Be
                Treated As The Hacker ........................................................ 7

        2.   The DTSA Claim Fails Under *Twombly* And *Iqbal* ..................... 11

    C.   The Court Should Dismiss Plaintiff's Electronic Communications
        Privacy Act Claim (Count 4) ...................................................... 14

        1.   Cloudflare Did Not Violate The ECPA ......................................... 14

        2.   Plaintiff Has Not Pled Facts Plausibly Showing That The
            Hacker Violated The ECPA ........................................................... 18

    D.   The Court Should Dismiss Plaintiff's Negligent Interference With
        Prospective Economic Advantage Claim (Count 8) ............................... 20

        1.   Section 230 Of The CDA Precludes Plaintiff's Negligent-
            Interference Claim ......................................................................... 20

        2.   CUTSA Preempts Plaintiff's Negligent-Interference Claim ......... 21

        3.   Plaintiff's Negligent-Interference Claim Fails To State A
            Claim Under *Twombly* and *Iqbal* .............................................. 22

    E.   The Court Should Dismiss Plaintiff's Declaratory Judgment Claim
        (Count 13) ......................................................................................... 23

    F.   The Court Should Dismiss All Of Plaintiff's Claims Against
        Cloudflare With Prejudice ............................................................. 24

IV.  Conclusion ............................................................................................ 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                           **Page(s)**

3

4   *Ajetunmobi v. Clarion Mortg. Capital, Inc.*,
        595 Fed. App'x 680 (9th Cir. 2014) ....................................................... 24

5
    *Arc Machines, Inc. v. Indus. Sols. & Innovations, LLC*,
6       13-CV-9473, 2014 WL 12687418 (C.D. Cal. July 8, 2014) ................................. 23

7
    *Ashcroft v. Iqbal*,
8       556 U.S. 662 (2009) ..................................................................... passim

9   *ATS Prods., Inc. v. Champion Fiberglass, Inc.*,
10      13-CV-02403, 2015 WL 224815 (N.D. Cal. Jan. 15, 2015) ................................. 21

11  *Barnes v. Yahoo!, Inc.*,
12      570 F.3d 1096 (9th Cir. 2009) ....................................................... 6, 9, 10

13  *Bartnicki v. Vopper*,
14      532 U.S. 514 (2001) ...................................................................... 17

15  *Batzel v. Smith*,
16      333 F.3d 1018 (9th Cir. 2003) .............................................................. 5

17  *Beckman v. Match.com, LLC*,
        668 Fed. App'x 759 (9th Cir. 2016) ....................................................... 25
18
    *Bell Atl. Corp. v. Twombly*,
19      550 U.S. 544 (2007) ................................................................... passim
20
    *Caraccioli v. Facebook, Inc.*,
21      167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...................................................... 6

22  *Caraccioli v. Facebook, Inc.*,
23      700 Fed. App'x 588 (9th Cir. 2017) ....................................................... 25

24  *Carafano v. Metrosplash.com Inc.*,
25      207 F. Supp. 2d 1055 (C.D. Cal. 2002) ...................................................... 8

26  *Carafano v. Metrosplash.com, Inc.*,
27      339 F.3d 1119 (9th Cir. 2003) .............................................................. 7

28

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
    17-CV-5169, 2018 WL 2558388 (C.D. Cal. Feb. 27, 2018) ................................... 22

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ................................................................. 25

*Chan v. Chancelor*,
    09-CV-1839, 2011 WL 5914263 (S.D. Cal. Nov. 28, 2011) ............................... 25

*Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
    519 F.3d 666 (7th Cir. 2008) ................................................................. 11

*City of Richmond v. Trump*,
    17-CV-01535, 2017 WL 3605216 (N.D. Cal. Aug. 21, 2017) ............................ 24

*Cohen v. Facebook, Inc.*,
    252 F. Supp. 3d 140 (E.D.N.Y. 2017) ........................................................ 9

*Custom Packaging Supply, Inc. v. Phillips*,
    15-CV-04584, 2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) .......................... 23, 25

*Darnaa, LLC v. Google, Inc.*,
    15-CV-03221, 2016 WL 6540452 (N.D. Cal. Nov. 2, 2016) ................................ 6

*Doe v. GTE Corp.*,
    347 F.3d 655 (7th Cir. 2003) ............................................................. 16, 17

*e360Insight, LLC v. Comcast Corp.*,
    546 F. Supp. 2d 605 (N.D. Ill. 2008) ........................................................ 11

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) ................................. 5, 6, 10, 11

*Fraser v. Nationwide Mut. Ins. Co.*,
    352 F.3d 107 (3d Cir. 2003) ................................................................. 18

*Gavra v. Google Inc.*,
    12-CV-06547, 2013 WL 3788241 (N.D. Cal. July 17, 2013) ................................ 9

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
    15-CV-04125, 2016 WL 6601656 (C.D. Cal. July 25, 2016) .......................... 21, 22

*Green v. Am. Online (AOL)*,
   318 F.3d 465 (3d Cir. 2003) ............................................................................. 8

*GW Equity LLC v. Xcentric Ventures LLC*,
   07-CV-976, 2009 WL 62173 (N.D. Tex. Jan. 9, 2009) ........................................ 9

*Hadley v. GateHouse Media Freeport Holdings, Inc.*,
   12-CV-1548, 2012 WL 2866463 (N.D. Ill. July 10, 2012)................................... 6

*Haro v. Trinity Fin. Servs., LLC*,
   15-CV-1185, 2015 WL 12001260 (S.D. Cal. Aug. 31, 2015) ............................ 24

*Hassell v. Bird*,
   S235968, 2018 WL 3213933 (Cal. July 2, 2018).................................................. 9

*Hullinger v. Anand*,
   15-CV-07185, 2015 WL 11072169 (C.D. Cal. Dec. 22, 2015) ........................... 25

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015)................................................................ 16

*In re Pharmatrak, Inc.*,
   329 F.3d 9 (1st Cir. 2003) ................................................................................ 18

*ISE Entm't Corp. v. Longarzo*,
   17-CV-9132, 2018 WL 1569803 (C.D. Cal. Feb. 2, 2018)................................. 24

*Jefferson v. Zukerberg*,
   17-CV-3299, 2018 WL 3241343 (D. Md. July 3, 2018)......................................... 5

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
   171 Cal. App. 4th 939 (2009)............................................................................ 21

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ......................................................................... 5, 6

*Kirch v. Embarq Mgmt. Co.*,
   10-CV-2047, 2011 WL 3651359 (D. Kan. Aug. 19, 2011) ................................. 16

*KLA-Tencor Corp. v. Murphy*,
   717 F. Supp. 2d 895 (N.D. Cal. 2010)................................................................ 17

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014)........................................................................... 7

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) .................................................................. 18

*Livewirecyber, Inc. v. Lee*,
    17-CV-00645, 2017 WL 4786087 (C.D. Cal. Aug. 3, 2017)................................ 23

*Loop AI Labs Inc v. Gatti*,
    15-CV-00798, 2015 WL 5158461 (N.D. Cal. Sept. 2, 2015) ................................ 22

*Mobile Active Def., Inc. v. Los Angeles Unified Sch. Dist.*,
    15-CV-8762, 2016 WL 7444876 (C.D. Cal. Apr. 6, 2016) ................................... 22

*Nelson Bros. Prof'l Real Estate LLC v. Jaussi*,
    17-CV-0158, 2017 WL 8220703 (C.D. Cal. Mar. 23, 2017)................................ 22

*Obado v. Magedson*,
    13-CV-2382, 2014 WL 3778261 (D.N.J. July 31, 2014)...................................... 11

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) .................................................................... 2

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) .................................................................. 21

*Ricci v. Teamsters Union Local 456*,
    13-CV-07729, 2014 WL 11353151 (S.D.N.Y. Apr. 28, 2014)............................... 6

*Robert Half Int'l, Inc. v. Ainsworth*,
    68 F. Supp. 3d 1178 (S.D. Cal. 2014) ...................................................... 22

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ................................................................................. 13

*Sanders v. Robert Bosch Corp.*,
    38 F.3d 736 (4th Cir. 1994) ...................................................................... 18

*Shapiro v. Hasbro, Inc.*,
    16-CV-05750, 2016 WL 9024810 (C.D. Cal. Aug. 15, 2016)............................... 22

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    697 Fed. App'x 526 (9th Cir. 2017)......................................................... 7

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
    919 F. Supp. 2d 1112 (D. Nev. 2013) ...................................................... 9

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*,
   873 F.2d 1221 (9th Cir. 1989) ................................................................. 24

*Strome v. DBMK Enterprises, Inc*.,
   14-CV-02398, 2014 WL 6485533 (N.D. Cal. Nov. 19, 2014) ............................ 24

*SunPower Corp. v. SolarCity Corp.*,
   12-CV-00694, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ............................ 21

*Tirabassi v. Chase Home Fin., LLC*,
   14-CV-08790, 2015 WL 1402016 (C.D. Cal. Mar. 24, 2015) ............................ 24

*United States v. Steiger*,
   318 F.3d 1039 (11th Cir. 2003) ............................................................... 19

*United States v. Townsend*,
   987 F.2d 927 (2d Cir. 1993) ................................................................... 18

*Valentine v. WideOpen W. Fin., LLC*,
   288 F.R.D. 407 (N.D. Ill. 2012) ............................................................. 16

*Veronica Foods Co. v. Ecklin*,
   16-CV-07223, 2017 WL 2806706 (N.D. Cal. June 29, 2017) ........................... 22

*W. Air Charter, Inc. v. Schembari*,
   17-CV-00420, 2017 WL 7240775 (C.D. Cal. Dec. 14, 2017) ........................... 23

*W. Sugar Coop. v. Archer-Daniels-Midland Co.*,
   11-CV-3473, 2013 WL 12123307 (C.D. Cal. Sept. 16, 2013) ............................. 6

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ..................................................................... 8

*Zheng v. Yahoo! Inc.*,
   08-CV-1068, 2009 WL 4430297 (N.D. Cal. Dec. 2, 2009) ............................... 19

**STATUTES**

18 U.S.C. § 1832(a) ................................................................... 12, 14

18 U.S.C. § 1836(b)(1) .................................................................... 11

18 U.S.C. § 1839 ...................................................................... 12, 13

18 U.S.C. § 2511(1)(a) ..................................................................... 15

18 U.S.C. § 2511(1)(b) ........................................................... 15

18 U.S.C. § 2511(1)(c) ........................................................... 15

18 U.S.C. § 2511(1)(d) ........................................................... 15

18 U.S.C. § 2520(a) ................................................. 14, 17, 18

18 U.S.C. § 2701(a) ............................................................... 18

47 U.S.C. § 230(c)(1) ..................................................... passim

Cal. Civ. Code § 3426.3(a) ................................................... 21

**RULES**

Fed. R. Civ. P. 8(a)(2).............................................................. 4

Fed. R. Civ. P. 12(b)(6) ........................................................... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff is aggrieved because a hacker purportedly obtained access to its computer network, stole certain of Plaintiff's alleged trade secrets, and posted those trade secrets onto Internet websites. Plaintiff rightly seeks to hold the hacker liable for his misdeeds. But Plaintiff has improperly brought this lawsuit against Cloudflare seeking to hold it liable for *failing to remove* the allegedly misappropriated content from the Internet.

Each of Plaintiff's claims against Cloudflare fails. Plaintiff's claims for trade-secret misappropriation under the Defend Trade Secrets Act ("DTSA") and negligent interference with prospective economic advantage are barred under Section 230 of the Communications Decency Act ("CDA"). Section 230 immunizes interactive computer service providers like Cloudflare from failure-to-remove claims, because under Section 230 Cloudflare has no duty to remove content posted on a website by someone else.

Further, none of Plaintiff's claims are plausible under *Twombly* and *Iqbal*, as Plaintiff asserts no cause of action that would render Cloudflare liable for the failure to remove content posted on a website that Cloudflare allegedly hosts. The Electronic Communications Privacy Act ("ECPA") does not require website hosts to remove trade secrets allegedly misappropriated and posted by hackers, nor does the DTSA. Plaintiff's state-law claim for negligent-interference fails because, among other things, Cloudflare owes no duty to Plaintiff. And, even if Plaintiff's negligent-interference claim was plausible, the California Uniform Trade Secrets Act ("CUT-SA") would preempt it. Finally, the Court should dismiss Plaintiff's cause of action for "declaratory relief" because no such cause of action exists.

For these and the other reasons explained below, the Court should dismiss Plaintiff's claims against Cloudflare with prejudice.

## II.   PLAINTIFF'S COMPLAINT

The Complaint pleads the following facts:[1] Plaintiff is a professional soccer team based in Portugal. *See* Compl. ¶ 1. Plaintiff possesses trade secrets—the "Misappropriated Trade Secrets"—that it maintains in a "protected computer network." *Id.* ¶¶ 2-3. Defendant John Doe 1 (the "Hacker"), along with "his/her/its co-conspirators" ("Does 2-100"), hacked into Plaintiff's protected computer network and improperly acquired the Misappropriated Trade Secrets. *Id.* ¶ 3. The Misappropriated Trade Secrets were then uploaded to certain websites, including www.rgho.st. *Id.* ¶¶ 31-32.

Plaintiff alleges that Cloudflare "is a server proxy for and/or hosts the website located at the URL www.rgho.st[.]" *Id.* ¶ 9; *see also id.* ¶ 30 (alleging that Cloudflare "maintains" the rgho.st website). According to Plaintiff, the rgho.st website is "owned and/or maintained" by Defendant Realistic Group, LLC. *Id.* ¶¶ 10, 31; *compare id.* ¶ 32 (alleging that Defendant Regtime Ltd. "maintains" www.rgho.st).

In 2017-2018, Plaintiff learned that the Misappropriated Trade Secrets had been posted on the Internet and discovered that it had been hacked. *Id.* ¶ 24. Plaintiff "notified the Defendants through its Portuguese counsel that certain postings on the websites owned and/or operated by the Defendants are Misappropriated Trade Secrets and repeatedly demanded the removal of [the] Misappropriated Trade Secrets from the Defendants' websites."[2] *Id.* ¶ 27. Defendants, however, "refused to remove the Misappropriated Trade Secrets from the Defendants' webpages." *Id.* ¶ 36.

---

[1]   Cloudflare disputes Plaintiff's allegations—including the allegation that Cloudflare hosts or maintains any of the websites-at-issue. Cloudflare is a pass-through internet intermediary that provides cybersecurity and optimization services to websites. Cloudflare does *not* host websites. Removing Cloudflare's services will not remove content that exists on the Internet but only make it slower and less secure. Plaintiff mistakenly asserts otherwise. Cloudflare understands that the Court will generally treat Plaintiff's assertions of fact as true for purposes of this Motion to Dismiss, *see Perez v. Nidek Co.*, 711 F.3d 1109, 1112 n.1 (9th Cir. 2013), and Cloudflare believes there is ample grounds to grant Cloudflare's Motion on the facts as pled.

[2]   Plaintiff defines "Defendants" to mean all defendants, including Cloudflare. Compl. at 2.

Based solely on this "refusal to remove," Plaintiff asserts four causes of action against Cloudflare:

- **Misappropriation of Trade Secrets under the DTSA (Count 3)**: Plaintiff alleges that, once Cloudflare knew that the disclosure "of Plaintiff's trade secrets was improper," Cloudflare's "failure to remove such information . . . constitutes [Cloudflare's] improper acquisition and misappropriation of Plaintiff's trade secrets." Compl. ¶ 78.

- **Violation of the ECPA (Count 4)**: Although Plaintiff pleads this cause of action against Cloudflare, its allegations focus principally on the Hacker: "Defendant Hacker . . . violated 18 U.S.C. § 2511(1)(a)-(d) of the Electronic Communications Privacy Act by knowingly and intentionally intercepting and/or procuring, the Misappropriated Trade Secrets. Defendants then intentionally disclosed and used the contents of the Misappropriated Trade Secrets." Compl. ¶ 90.

- **Negligent Interference with Prospective Economic Advantage (Count 8)**: Plaintiff asserts that it "has an expectancy in continuing and [sic] advantageous economic relationships" and that "[h]ad Defendants refrained from engaging in the unlawful and wrongful conduct described in this Complaint, there is a substantial probability that Plaintiff would have increased its future economic benefits." Compl. ¶¶ 138-39. "Defendants knew or should have known about the economic relationship, described above, and knew or should have known that these relationships would be interfered with and disrupted if Defendants failed to act with reasonable care in their conduct related to the Misappropriated Trade Secrets." *Id.* ¶ 140. "As a result of Defendants' failure to act with reasonable care, Plaintiff's relationships have been actually disrupted." *Id.* ¶ 141.

- **Declaratory Relief (Count 13)**: Plaintiff pleads that "[a]n actual controversy has arisen between Plaintiffs and Defendants, and each of them, with re-

spect to the rights, obligations and duties of the parties, warranting the issu-

ance of a declaratory judgment." *Id.* ¶ 170.

## III.    ARGUMENT

### A.    Motion To Dismiss Standard

Rule 12(b)(6) allows a court to dismiss a claim if it fails to "state a claim upon which relief can be granted." Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The plaintiff's obligation to provide the "grounds of [its] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and the complaint must, at a minimum, "state a claim to relief that is plausible on its face." *Id.* at 555, 570. Where claims are only conceivable, but not plausible, the complaint must be dismissed. *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that al-lows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawful-ly" and "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Pleading facts that are "merely consistent with a defendant's liability [] stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotations and citation omitted). "[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'" and dismissal is required. *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B.    The Court Should Dismiss Plaintiff's Defend Trade Secrets Act Claim (Count 3)

The Court should dismiss Plaintiff's DTSA claim for two independent reasons. First, Cloudflare is an interactive computer service provider immune from trade-secret

1  liability for failure to remove Internet content under Section 230 of the CDA.[3]
2  Second, Plaintiff's trade-secret claim fails to state a plausible claim.

3    1.    Plaintiff's DTSA Claim Fails Under Section 230 Of The CDA

4    Section 230 of the Communications Decency Act "immunizes providers of in-
5  teractive computer services against liability arising from content created by third par-
6  ties."[4] *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265 (9th Cir. 2016) (citing and quoting
7  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157,
8  1162 (9th Cir. 2008) (en banc)). Specifically, Section 230 provides that "[n]o provider
9  or user of an interactive computer service shall be treated as the publisher or speaker
10 of any information provided by another information content provider." 47 U.S.C. §
11 230(c)(1). In this case, Cloudflare is a provider of an interactive computer service.
12 And, to succeed with its claims, Plaintiff would require that Cloudflare be treated as
13 the publisher or speaker of the information uploaded to the Internet by the Hacker.
14 Accordingly, Cloudflare is immune from DTSA liability under Section 230.

15    *a.    Cloudflare Is An Interactive Computer Service*

16    An "interactive computer service" is "any information service, system, or ac-
17 cess software provider that provides or enables computer access by multiple users to a
18 computer server, including specifically a service or system that provides access to the
19 Internet[.]" 47 U.S.C. § 230(f)(2). Because it allegedly hosts and maintains a website
20 (www.rgho.st), Cloudflare is a provider of an information service, system, and access

21

22    [3]   Section 230 immunity is properly raised on a motion to dismiss. *See, e.g., Kim-
23 zey v. Yelp! Inc.*, 836 F.3d 1263, 1267 (9th Cir. 2016); *Jefferson v. Zukerberg*, 17-CV-
3299, 2018 WL 3241343, at *5 (D. Md. July 3, 2018) ("[T]he CDA immunity is
24 broad and must be determined at the earliest possible stage of the case.") (citation and
quotation omitted).

25    [4]   "Section 230 was prompted by a state court case holding Prodigy responsible
26 for a libelous message posted on one of its financial message boards." *Fair Hous.
Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163 (9th
Cir. 2008) (en banc). In *Prodigy*, the court held Prodigy liable for *not removing* the
27 content-at-issue from its website. *Id.* at 1170. Congress sought to reverse *Prodigy's*
holding when passing Section 230. *Id.* "Section 230 [] sought to prevent lawsuits
28 from shutting down websites and other services on the Internet." *Batzel v. Smith*, 333
F.3d 1018, 1027-28 (9th Cir. 2003).

software that enables computer access by multiple users (e.g., anyone with a computer and an Internet connection) to a computer server (e.g., the server that hosts www.rgho.st), including a service and system that provides access to the Internet.[5]

Website hosts—as Plaintiff alleges Cloudflare is here—are providers of interactive computer services under Section 230. *See, e.g.*, *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009) (Yahoo's hosting of webpages qualifies as an interactive computer service); *Kimzey*, 836 F.3d at 1268 ("Yelp is plainly a provider of an 'interactive computer service,' *see* 47 U.S.C. § 230(f)(2), a term that we interpret 'expansive[ly]' under the CDA"); *Fair Hous.*, 521 F.3d at 1162 n.6 ("Today, the most common interactive computer services are websites.").[6]

### b.    The Hacker Is An Information Content Provider

An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Plaintiff does not contend that Cloudflare posted or uploaded the Misappropriated Trade Secrets to www.rgho.st—instead, Plaintiff alleges that the Hacker posted the allegedly offending materials. *See* Compl. ¶ 5. In fact, Plaintiff specifically pleads that the Hacker, as a "develope[r] [of] the illegal postings placed on other Defendants' web-

---

[5]    "Internet" means "the international computer network of both Federal and non-Federal interoperable packet switched data networks." 47 U.S.C. § 230(f)(1); Compl. ¶ 5 (the Hacker "uploaded the Misappropriated Trade Secrets onto the Internet on multiple webpages within multiple websites").

[6]    *See also Darnaa, LLC v. Google, Inc.*, 15-CV-03221, 2016 WL 6540452, at *7 (N.D. Cal. Nov. 2, 2016) (YouTube is an interactive computer service); *W. Sugar Co-op. v. Archer-Daniels-Midland Co.*, 11-CV-3473, 2013 WL 12123307, at *2 (C.D. Cal. Sept. 16, 2013) ("Section 230 of the CDA immunizes providers of interactive computer services, such as website operators like Plaintiffs, against liability . . ."); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1065 (N.D. Cal. 2016) ("Facebook provides an interactive computer service."); *Ricci v. Teamsters Union Local 456*, 13-CV-07729, 2014 WL 11353151, at *2 (S.D.N.Y. Apr. 28, 2014) ("passive host of third party content on [a] server or websites [constitutes] an interactive computer service that is entitled to immunity"); *Hadley v. GateHouse Media Freeport Holdings, Inc.*, 12-CV-1548, 2012 WL 2866463, at *2 (N.D. Ill. July 10, 2012) ("Defendant, as a website host that allows readers to post comments, is an interactive computer service.").

sites," is a "developer" who is "not entitled to immunity under Communications Decency Act, 47 U.S.C. §230." Compl. ¶ 73. But Plaintiff makes no such claim as to Cloudflare—nor could it. The Hacker, as the one responsible for posting information on the Internet, is thus an information content provider.

> c.    *Cloudflare Is Immune From DTSA Liability Because Plaintiff's Claims Would Require Cloudflare To Be Treated As The Hacker*

Under Section 230, Cloudflare (an interactive computer service) cannot be treated as the publisher or speaker of any information provided by the Hacker on www.rgho.st. Instead, Cloudflare is immune under Section 230 where liability would depend on Cloudflare's alleged role as a publisher or speaker. *See, e.g.*, *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 Fed. App'x 526 (9th Cir. 2017) (CDA "provides interactive computer service providers immunity from civil liability when the claim is premised upon the provider's role as 'the publisher or speaker of any information provided by another information content provider'") (quoting 47 U.S.C. § 230(c)(1), (c)(2)); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) ("Under § 230(c), therefore, so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity[.]").

Here, it is undisputable that Cloudflare's alleged liability depends on treating Cloudflare as a publisher—indeed, Plaintiff only sued Cloudflare because Cloudflare allegedly failed to remove the Misappropriated Trade Secrets from www.rgho.st. *See* Compl. ¶¶ 36, 78 ("Defendants [sic] failure to remove such information upon receipt of Plaintiff's objections to disclosure of and requests to remove the Misappropriated Trade Secrets constitutes Defendants' improper acquisition and misappropriation of Plaintiff's trade secrets."). Courts regularly reject such "failure to remove" claims in view of Section 230 immunity:

- *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-59 (D.C. Cir. 2014) (Section 230 rendered Facebook immune from claim that it *failed to remove a webpage*—Facebook was not liable where the complaint charged it with "al-

lowing" the pages to exist and "furthering" them by not "remov[ing] these postings" because "a website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online"; publication means "both the communication of, and the *failure to remove*, the relevant content" as "the very essence of publishing is making the decision whether to print or retract a given piece of content") (emphases added).

- *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("§ 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—*such as deciding whether to publish, withdraw, postpone or alter content*—are barred.") (emphasis added).

- *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) ("There is no real dispute that Green's fundamental tort claim is that AOL was negligent in promulgating harmful content and *in failing to address* certain harmful content on its network. Green thus attempts to hold AOL liable for decisions relating to the monitoring, screening, and *deletion* of content from its network—actions quintessentially related to a publisher's role. Section 230 specifically proscribes liability in such circumstances.") (citation and quotations omitted) (emphases added).

- *Carafano v. Metrosplash.com Inc.*, 207 F. Supp. 2d 1055, 1064 (C.D. Cal. 2002) ("[C]laims seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—*such as deciding whether to publish, withdraw, postpone or alter content*—are barred.") (emphasis added).

- *Gavra v. Google Inc.*, 12-CV-06547, 2013 WL 3788241, at *3 (N.D. Cal. July 17, 2013) ("Plaintiffs' extortion claim is simply a relabeled negligence

claim, which is in turn another attempt to hold Google liable for publication activity. *Google has assumed no affirmative duty* to protect Plaintiffs from extortion and *to remove the videos, and, even if it had, any such duty would have arisen from its role as a publisher*. The CDA protects Google in all these instances.") (citation and quotations omitted) (emphases added).

- *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 157 (E.D.N.Y. 2017) ("Section 230(c)(1) prevents courts from entertaining civil actions that seek to impose liability on defendants like Facebook for allowing third parties to post offensive or harmful content or *failing to remove* such content once posted.") (emphasis added).

- *Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1127 (D. Nev. 2013) (dismissing misappropriation of trade secret claim brought under state law as immunized under the CDA).

- *GW Equity LLC v. Xcentric Ventures LLC*, 07-CV-976, 2009 WL 62173, at *19 (N.D. Tex. Jan. 9, 2009) (dismissing disclosure of trade secret claim based on Section 230).

- *Hassell v. Bird*, S235968, 2018 WL 3213933, at *1 (Cal. July 2, 2018) (Section 230 precluded an injunction directed to Yelp compelling it to remove defamatory post from a Yelp user who had been found to have defamed plaintiff—injunction improperly treated Yelp as a publisher).

The Ninth Circuit, in *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009), specifically rejected a lawsuit premised on Plaintiff's failure-to-remove liability theory. In *Barnes*, the plaintiff's ex-boyfriend posted profiles of plaintiff containing nude photographs taken without her knowledge on a website run by Yahoo. *Id.* at 1098. The ex-boyfriend also posted an "open solicitation" to engage in sexual intercourse, as well as plaintiff's address and telephone number. *Id.* "Before long, men whom [plaintiff] did not know were peppering her office with emails, phone calls, and personal visits, all in the expectation of sex." *Id.* The plaintiff requested removal of the

profiles. *Id.* After Yahoo failed to remove the profiles, plaintiff filed suit, asserting a negligent undertaking claim. *Id.* at 1099. The district court dismissed plaintiff's claim "on the ground that section 230(c)(1) makes Yahoo 'immune' against any liability for the content that [plaintiff's] former boyfriend had posted." *Id.* at 1100. The Ninth Circuit affirmed.

In the process, the Ninth Circuit found that Section 230(c) "bars courts from treating certain internet service providers as publishers or speakers." *Id.* "[P]ublication involves reviewing, editing, and deciding whether to publish *or to withdraw from publication* third-party content." *Id.* at 1102 (emphasis added); *see also Fair Hous.*, 521 F.3d at 1170-71 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). Because "*removing content* is something publishers do, [] impos[ing] liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." *Barnes*, 570 F.3d at 1103 (emphasis added). Accordingly, Section 230 barred the plaintiff's claim, as the claim would require Yahoo to be treated as a "publisher or speaker" of the indecent profiles. Stated differently, "subsection 230(c)(1) precludes liability when the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker." *Id.* at 1107.

The same is true here—Cloudflare has no obligation to remove content posted by the Hacker and Section 230 precludes Cloudflare from liability for its alleged failure to remove the content.[7] *See, e.g., Fair Hous.*, 521 F.3d at 1174 ("[Section 230] is an immunity statute[], *a provision enacted to protect websites against the evil of lia-*

---

[7]    Section 230 applies to not only state-law causes of action but also federal-law causes of action. *See, e.g., Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 672 (7th Cir. 2008) (Section 230 immunized claim based on federal Fair Housing Act); *e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) (dismissing federal law claims based on Section 230 immunity); *Obado v. Magedson*, 13-CV-2382, 2014 WL 3778261, at *8 (D.N.J. July 31, 2014) ("Defendants are entitled to immunity from all of Plaintiff's claims—state and federal—under § 230 of the CDA.").

1  *bility for failure to remove offensive content.* . . . [C]ases . . . must be resolved in favor

2  of immunity, lest we cut the heart out of section 230 by forcing websites to face death

3  by ten thousand duckbites, fighting off claims that they promoted or encouraged—or

4  at least tacitly assented to—the illegality of third parties.") (emphasis added).[8]

5          2.     The DTSA Claim Fails Under *Twombly* And *Iqbal*

6        The Court should also dismiss Plaintiff's DTSA claim because it is implausible.

7  Federal law allows "[a]n owner of a trade secret that is misappropriated [to] bring a

8  civil action[.]" 18 U.S.C. § 1836(b)(1). "Misappropriation" means:

9          (A) *acquisition* of a trade secret of another by a person who

10          *knows or has reason to know* that the trade secret was ac-

11          quired by improper means; or

12          (B) *disclosure or use* of a trade secret of another without

13          express or implied consent by a person who—

14             (i) used improper means to acquire knowledge of the

15          trade secret;

16             (ii) at the time of disclosure or use, *knew or had rea-*

17          *son to know* that the knowledge of the trade secret was—(I)

18          derived from or through a person who had used improper

19          means to acquire the trade secret; (II) acquired under cir-

20          cumstances giving rise to a duty to maintain the secrecy of

21          the trade secret or limit the use of the trade secret; or (III)

22          derived from or through a person who owed a duty to the

23

24

25      [8]   Plaintiff may argue that Section 230 does not doom its DTSA claim because 47

26  U.S.C. § 230(e)(2) states that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property." Any such argument lacks merit,

27  because the DTSA specifically states that "[t]his section and the amendments made by this section shall *not* be construed to be a law pertaining to intellectual property for

28  purposes of any other Act of Congress." Defend Trade Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat 376 (Section 2(g)) (emphasis added).

1    person seeking relief to maintain the secrecy of the trade se-
2    cret or limit the use of the trade secret; or

3         (iii) before a material change of the position of the
4    person, *knew or had reason to know* that—(I) the trade se-
5    cret was a trade secret; and (II) knowledge of the trade se-
6    cret had been acquired by accident or mistake.

7    18 U.S.C. § 1839(5) (emphases added).

8         Plaintiff alleges that Cloudflare is liable under 18 U.S.C. § 1832(a)(1)-(3) for
9    "either knowingly and intentionally stealing and/or misappropriating, receiving and/or
10   possessing without authorization the Misappropriated Trade Secrets." Compl. ¶ 70.
11   To begin with, Plaintiff pleads no facts that Cloudflare "stole" any trade secrets—
12   instead, Plaintiff pleads that the Hacker, along with other unnamed Doe defendants,
13   committed the hacking and stole the Misappropriated Trade Secrets. *Id.* ¶ 3.

14        That leaves Plaintiff with the allegation that Cloudflare "misappropriat[ed], re-
15   ceiv[ed] and/or possess[ed] without authorization the Misappropriated Trade Secrets."
16   *Id.* ¶ 70. As noted above, the DTSA ties misappropriation to certain instances of im-
17   proper acts of "acquiring" a trade secret, or improperly "disclosing" or "using" a trade
18   secret. Cloudflare, as an alleged website host, neither acquired, disclosed or used
19   Plaintiff's trade secrets. The DTSA does *not* define misappropriation as the failure to
20   remove trade secrets from a website.

21        Even if Cloudflare did somehow "acquire," "disclose," or "use" Plaintiff's
22   trade secrets (and it did not), the Complaint does not plead that Cloudflare *knew* that
23   Plaintiff's trade secrets had been misappropriated by the Hacker *at the time* Cloud-
24   flare allegedly acquired, disclosed, or used the secrets. This is yet another reason to
25   dismiss Plaintiff's DTSA claim, as the definition of misappropriation is tied inextri-
26   cably to knowledge—the DTSA is not a strict liability offense. 18 U.S.C. § 1839(5).

27        Further, it appears that, by the time Plaintiff requested that Cloudflare remove
28   Plaintiff's alleged trade secrets from the Internet, the trade secrets had been posted on

the Internet for quite some time. Compl. ¶ 24 (Plaintiff came to learn of the "unau-thorized public postings" over a two-year period). As such, at that point, Cloudflare's failure to remove Plaintiff's materials could not constitute trade-secret misappropria-tion because Plaintiff's materials were no longer entitled to trade secret status. *See, e.g.*, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("Information that is public knowledge or that is generally known in an industry cannot be a trade secret."); 18 U.S.C. § 1839(3) (information that is generally known, or ascertainable by proper means, is not a trade secret). Moreover, Plaintiff does not plead any facts showing that its alleged trade secrets were stolen by the Hacker after May 11, 2016, the effective date of the DTSA. Because Plaintiff learned of the hacking "in or about" 2017, *see* Compl. ¶ 24, one could reasonably conclude that the hacking took place prior to May 11, 2016, such that DTSA liability would not arise in the first place. *See* Defend Trade Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat 376 (Section 2(e) (DTSA liability prospective only)).

Finally, the specific statutes that Cloudflare allegedly violated (assuming they create a private right of action, which they do not) contain a *mens rea* requirement:

> (a) Whoever, *with intent to convert a trade secret . . .* and *intending or knowing that the offense will, injure* any owner of that trade secret, *knowingly*—
>
> > (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or de-ception obtains such information;
> >
> > (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information; [or]

(3) receives, buys, or possesses such information,
*knowing* the same to have been stolen or appropriated, ob-
tained, or converted without authorization; . . .

shall . . . be fined under this title or imprisoned not more
than 10 years, or both.

18 U.S.C. § 1832(a)(1)-(3) (emphases added); Compl. ¶ 70 (alleging violation of 18 U.S.C. § 1832(a)(1)-(3)). Here again, Plaintiff does not plead any plausible facts concerning Cloudflare's state of mind. Plaintiff certainly does not plead any plausible facts showing that Cloudflare had any intention of converting a trade secret or intending (or knowing) that its actions would injure Plaintiff. Nor has Plaintiff pled any facts showing that Cloudflare knowingly took any action (e.g., stealing, copying, mailing, receiving, possessing, etc.) with respect to the alleged trade secrets. The failure to plead any such facts renders the DTSA claim implausible.

**C.    The Court Should Dismiss Plaintiff's Electronic Communications Privacy Act Claim (Count 4)**

Plaintiff does not plead a plausible claim against Cloudflare under the ECPA. 18 U.S.C. § 2520(a) provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the ECPA] may in a civil action recover from the person or entity . . . which engaged in that violation[.]"[9] Accordingly, to hold Cloudflare liable for an ECPA violation, Plaintiff must show that (i) its wire, oral, or electronic communication was (ii) intercepted, disclosed or intentionally used (iii) by Cloudflare (iv) in violation of the ECPA. Plaintiff's ECPA claim fails for two independent reasons. First, Cloudflare did not violate the ECPA; and second, Plaintiff has not shown that the Hacker did either.

1.    <u>Cloudflare Did Not Violate The ECPA</u>

Plaintiff pleads no plausible facts that Cloudflare violated the ECPA. The only

---

[9]   The ECPA is not affected by Section 230 of the CDA, *see* 47 U.S.C. § 230(e)(4), so Cloudflare does not raise Section 230 as a defense to the ECPA claim.

plausible fact that Plaintiff pleads is that Cloudflare failed to remove Plaintiff's Misappropriated Trade Secrets from a website allegedly hosted by Cloudflare. *See* Compl. ¶¶ 36, 99. Failing to remove content from a website does not constitute a violation of the ECPA, as the ECPA does not require Cloudflare to remove content from websites.

The ECPA claim fails because Plaintiff pleads no facts showing that Cloudflare violated the ECPA—i.e., no plausible facts are pled that Cloudflare:

- intentionally intercepted, endeavored to intercept, or procured any other person to intercept or endeavored to intercept, any wire, oral, or electronic communication (thus violating 18 U.S.C. § 2511(1)(a));

- intentionally used, endeavored to use, or procured any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication (thus violating 18 U.S.C. § 2511(1)(b));

- intentionally disclosed, or endeavored to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of the ECPA (thus violating 18 U.S.C. § 2511(1)(c)); or

- intentionally used, or endeavored to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of the ECPA (thus violating 18 U.S.C. § 2511(1)(d)).

Instead, Plaintiff attempts to premise liability against Cloudflare by alleging that Cloudflare "intentionally disclosed" and "intentionally used" the Misappropriated Trade Secrets by simply *hosting* the rgho.st website and failing to remove the materi-

al. Compl. ¶ 90. But this "secondary" theory of liability fails as a matter of law. *See, e.g.*, *Doe v. GTE Corp.*, 347 F.3d 655, 658-59 (7th Cir. 2003) ("aiding and abetting" liability does not exist under ECPA for website host where website offered illegally obtained videos for sale, nude images from videos passed over host's network, and website was stored on host's servers); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) ("there is simply no secondary liability (such as aiding and abetting) under the ECPA"); *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 411-12 (N.D. Ill. 2012) ("[C]ourts have declined to find a private cause of action against those who aid and abet or conspire with others to intercept, disclose, or use electronic communications in violation of the ECPA" such that internet service pro-vider who "merely facilitated" another's acquisition of plaintiff's information did not violate the ECPA) (citing cases); *Kirch v. Embarq Mgmt. Co.*, 10-CV-2047, 2011 WL 3651359, at *7 (D. Kan. Aug. 19, 2011) ("[T]he ECPA, however, does not provide for secondary liability. . . . [A] defendant does not 'intercept' a communication merely by allowing or enabling, or even directing, another party to intercept communications.").

As the Seventh Circuit found in *Doe v. GTE Corp.*, web hosts are not subject to ECPA liability due to another's improper activities:

> A web host, like a delivery service or phone company, is an intermediary and normally is indifferent to the content of what it transmits. *Even entities that know the information's content do not become liable for the sponsor's deeds.* . . .
>
> GTE does not want to encourage the surreptitious intercep-tion of oral communications, nor did it profit from the sale of the tapes. It does profit from the sale of server space and bandwidth, but these are lawful commodities whose uses overwhelmingly are socially productive. *That web hosting services likewise may be used to carry out illegal activities*

1
2

> *does not justify condemning their provision whenever a giv-*
>
> *en customer turns out to be crooked. . . .*

3
4
5
6
7
8
9

> *[A] web host cannot be classified as an aider and abettor of*
> *criminal activities conducted through access to the Internet.*
> Congress is free to oblige web hosts to withhold services
> from criminals (to the extent legally required screening for
> content may be consistent with the first amendment), but
> *neither § 2511(a) nor § 2520 can be understood as such a*
> *statute.*

10
11

347 F.3d at 659 (emphases added). Accordingly, Cloudflare has not violated the ECPA by failing to remove illegally obtained materials posted by a third party.[10]

12
13
14
15
16
17
18
19
20
21
22

Additionally, the ECPA contains an intent element, and Plaintiff has not plausibly alleged that Cloudflare had the intent to engage in any conduct proscribed by the ECPA. *See* 18 U.S.C. § 2520(a); 18 U.S.C. § 2511(1)(a)-(d). "Intentional," in the ECPA, means more than that one voluntarily engaged in conduct or caused a result— the conduct or the causing of the result must have been the person's "conscious objective." *KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 905 (N.D. Cal. 2010) ("[T]he term 'intentional' is narrower than the dictionary definition and requires that the defendant have as a conscious objective the conduct or the causing of the result."); *In re Pharmatrak, Inc.*, 329 F.3d 9, 23 (1st Cir. 2003) ("[I]nadvertent interceptions are not a basis for criminal or civil liability under the ECPA.") (citation omitted).[11]

23
24
25

---

[10]   The First Amendment would also preclude the imposition of liability on Cloudflare (an entity not involved in the alleged hacking), because an initial illegal interception does not render persons not involved in the interception liable for subsequent use or disclosure of the illegally obtained communications. *See, e.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 534-35 (2001).

26
27
28

[11]   *See also Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 742-43 (4th Cir. 1994) ("The [ECPA] thus requires that interceptions be intentional[.]") (quotations and citation omitted); *United States v. Townsend*, 987 F.2d 927, 930 (2d Cir. 1993) (to violate the ECPA, the "defendant's act must have been the product of defendant's conscious objective rather than the product of a mistake or an accident").

Thus, even if Cloudflare disclosed or used any of Plaintiff's Misappropriated Trade Secrets (and it did not), Plaintiff has alleged no facts showing that Cloudflare did so intentionally—i.e., with the conscious objective of violating the ECPA.

> 2.    Plaintiff Has Not Pled Facts Plausibly Showing That The Hacker Violated The ECPA

Plaintiff has not pled sufficient facts showing that its trade secrets were obtained by the Hacker in violation of the ECPA, thus dooming Plaintiff's attempt to plead an ECPA violation against Cloudflare. In other words, if Plaintiff's Misappropriated Trade Secrets were not originally obtained in violation of the ECPA, no liability under the ECPA can possibly arise against Cloudflare. 18 U.S.C. § 2520(a); 18 U.S.C. § 2511(1)(a)-(d).

For a violation of the ECPA to exist, Plaintiff's communications must have been obtained by the Hacker while they were in transit—i.e., while "in flight"—as opposed to while they were in storage.[12] *See, e.g., Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ("[F]or a website such as Konop's to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage."); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003) ("Every circuit court to have considered the matter has held that an 'intercept' under the ECPA must occur contemporaneously with transmission.").

Given the "in flight" requirement, the Eleventh Circuit in *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003), noted that "very few seizures of electronic communications from computers will constitute 'interceptions'" because "[t]here is only a narrow window during which an E-mail interception may occur—the seconds or mili-seconds before which a newly composed message is saved to any temporary

---

[12]   As its name implies, the Stored Communications Act protects *stored* communications. 18 U.S.C. § 2701(a) (proscribing certain actions with respect to "obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in *electronic storage*") (emphasis added). Plaintiff does not plead a Stored Communications Act claim against Cloudflare. *See* Compl. ¶¶ 52-68 (pleading Stored Communications Act claim only against Hacker and Doe defendants).

location following a send command." *Id.* (quotations and citations omitted). Accordingly, "interception of E-mail within the prohibition of [the Wiretap Act] is virtually impossible." *Id.* (citations and quotations omitted).

Here, Plaintiff alleges that the Hacker "obtained access" to Plaintiff's Misappropriated Trade Secrets while they "*were in electronic storage*[.]" Compl. ¶¶ 55, 91 (emphasis added); *see also id.* ¶ 3 (Hacker "unlawfully removed contents from Plaintiff's protected computer network" and "improperly acquired Plaintiff's trade secrets . . . located within Plaintiff's protected computer network").[13] Plaintiff does not plead sufficient facts showing that the e-mails (or any other information) were obtained while in transfer (i.e., while they were "in flight"), as opposed to while they were in storage. This precludes Plaintiff's ECPA claim.

Further, the ECPA requires the "interception" to have occurred in the United States. *See, e.g.*, *Zheng v. Yahoo! Inc.*, 08-CV-1068, 2009 WL 4430297, at *4 (N.D. Cal. Dec. 2, 2009) ("the ECPA does not apply outside the United States"). Plaintiff does not plead that the Hacker intercepted its communications in the United States. Indeed, Plaintiff is a foreign entity with a Portuguese website domain (i.e., ".pt") and does not know who the Hacker is, *see* Compl. ¶¶ 1, 4, 7—it stands to reason that any hacking may have occurred overseas. There are certainly no facts in the Complaint plausibly showing that the Hacker obtained Plaintiff's communications while in the United States. As such, Plaintiff's ECPA claim fails for this independent reason.

---

[13] Only one convoluted sentence in the Complaint suggests that the Hacker obtained the Misappropriated Trade Secrets during transmission: "Given the manner and form in which Defendant Hacker . . . posted the emails containing the Misappropriated Trade Secrets on Defendants' websites, Defendant Hacker . . . intercepted from Plaintiff's facilities, email exchanges between Plaintiff's management containing the Misappropriated Trade Secrets during the electronic transmission of such emails from Plaintiff's facilities and not while the information is [sic] in electronic storage." Compl. ¶ 95. This allegation, if read to mean that the Hacker obtained the Misappropriated Trade Secrets while "in flight," is entirely conclusory and implausible. For example, posting e-mails on a website says nothing about whether the e-mails were obtained while "in flight" as opposed to while in storage. The Court should thus disregard the allegation as conclusory under *Twombly* and *Iqbal*.

In sum, because Plaintiff has not pled a plausible ECPA claim against the Hacker, its ECPA claim against Cloudflare also fails.

**D.    The Court Should Dismiss Plaintiff's Negligent Interference With Prospective Economic Advantage Claim (Count 8)**

The Court should dismiss Plaintiff's negligent interference with prospective economic advantage claim for three independent reasons. First, the claim fails under Section 230 of the CDA. Second, CUTSA preempts the claim. Third, the claim is implausible under *Twombly* and *Iqbal*.

1.    Section 230 Of The CDA Precludes Plaintiff's Negligent-Interference Claim

Section 230 bars not only Plaintiff's Defend Trade Secrets Act claim, but also Plaintiff's state-law claim for negligent interference. 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."). As noted above (*see* Section III.B.1.a), Cloudflare is an interactive computer service that cannot be treated, under Section 230, as the publisher of any material uploaded by anyone else to the Internet. Section 230 thus immunizes Cloudflare from state-law causes of action like negligent interference because, among other things, Cloudflare has no duty to remove any postings on sites it allegedly hosts, and Plaintiff specifically seeks to hold Cloudflare liable under Plaintiff's negligent-interference claim because Cloudflare allegedly "*failed to act* with reasonable care in [its] conduct related to the Misappropriated Trade Secrets." *Compare, e.g.*, Section III.B.1.c, above (cases holding no duty to re move website content under Section 230) *with* Compl. ¶ 140 (tying negligent-interference claim to Cloudflare's alleged failure to act).[14]

---

[14]   Negligent interference is not an intellectual-property claim outside the scope of Section 230's immunity. And, even if it could be classified as an intellectual-property claim, the Ninth Circuit has held that Section 230 immunizes interactive computer service providers like Cloudflare from state law intellectual-property claims. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007) ("intellectual property" carveout in Section 230 applies only to "federal intellectual property" not to state intellectual property).

## 2.   CUTSA Preempts Plaintiff's Negligent-Interference Claim

The California Uniform Trade Secrets Act allows a plaintiff to "recover damages for the actual loss caused by misappropriation." Cal. Civ. Code § 3426.3(a). California courts have found that CUTSA's "'comprehensive structure and breadth' suggests a legislative intent to *occupy the field.*" *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 957 (2009) (emphasis added). "The CUTSA states that it supersedes other civil remedies based on trade secret misappropriation." *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 13-CV-02403, 2015 WL 224815, at *1 (N.D. Cal. Jan. 15, 2015) (citing Cal. Civ. Code § 3426.7(b)(2)). Accordingly, "[c]ourts have consistently held that the CUTSA preempts common law claims that are based on the *same nucleus of facts* as the misappropriation of trade secrets claim for relief.'" *ATS Prods.*, 2015 WL 224815, at *1 (citations and quotations omitted) (emphasis added); *see also GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, 15-CV-04125, 2016 WL 6601656, at *7 (C.D. Cal. July 25, 2016) ("The CUTSA preempt[s] claims based on the same nucleus of facts as [an alleged] trade secret misappropriation.") (citation and quotations omitted).

A plaintiff cannot use creative pleading to escape the reach of CUTSA preemption. *See, e.g., SunPower Corp. v. SolarCity Corp.*, 12-CV-00694, 2012 WL 6160472, at *1, *13 (N.D. Cal. Dec. 11, 2012) (dismissing, as preempted under CUTSA, claims for breach of confidence, conversion, trespass to chattels, tortious interference, common law unfair competition, and unfair competition under § 17200 where, "while stated in various ways, [the] [c]laims allege[] in essence that Defendants violated [Plaintiff's] rights by acquiring, disclosing, and/or using, without consent (i.e. misappropriating) [Plaintiff's] proprietary information"). "In other words, common law tort claims are displaced by CUTSA where they do not genuinely allege alternative legal theories but are a transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as something else." *Loop AI Labs Inc v. Gatti*, 15-CV-00798, 2015 WL 5158461, at *2 (N.D. Cal. Sept. 2, 2015) (citation and quotations omitted); *Geo-*

1   *Data*, 2016 WL 6601656, at *7 (same).

2       Here, the Court should dismiss Plaintiff's negligent-interference claim as

3   preempted by CUTSA.[15] Plaintiff seeks to hold Cloudflare liable on its negligent-

4   interference claim because Cloudflare failed to remove the Misappropriated Trade Se-

5   crets from a website Cloudflare allegedly hosts. Compl. ¶ 140. This conduct, accord-

6   ing to Plaintiff, is the exact same conduct that gives rise to its federal trade-secret

7   misappropriation claim. *Id.* ¶ 78. The negligent-interference claim thus involves the

8   same nucleus of operative facts as a CUTSA misappropriation claim, and is subject to

9   dismissal due to CUTSA preemption.[16] *See, e.g., Nelson Bros. Prof'l Real Estate LLC*

10  *v. Jaussi*, 17-CV-0158, 2017 WL 8220703, at *8 (C.D. Cal. Mar. 23, 2017) (dismiss-

11  ing interference with prospective economic advantage claim as preempted under

12  CUTSA); *Custom Packaging Supply, Inc. v. Phillips*, 15-CV-04584, 2015 WL

13  8334793, at *4 (C.D. Cal. Dec. 7, 2015) (same).

14          3.   <u>Plaintiff's Negligent-Interference Claim Fails To State A Claim</u>
             <u>Under *Twombly* and *Iqbal*</u>
15

16      "The elements of a claim for negligent interference with a prospective econom-

17  ic advantage are as follows: '(1) an economic relationship between the plaintiff and

18  _____

19  [15] Courts dismiss CUTSA-preempted claims on the pleadings. *See, e.g., Nelson Bros. Prof'l Real Estate LLC v. Jaussi*, 17-CV-0158, 2017 WL 8220703, at *8 (C.D.
20  Cal. Mar. 23, 2017) (dismissing interference with economic advantage claim as preempted under CUTSA on a motion to dismiss); *Mobile Active Def., Inc. v. Los An-*
21  *geles Unified Sch. Dist.*, 15-CV-8762, 2016 WL 7444876, at *5 (C.D. Cal. Apr. 6, 2016) (dismissing common law and statutory unfair competition claim as preempted
22  by CUTSA).

23  [16] For present purposes, there are no meaningful differences between a DTSA claim and a CUTSA claim. *See, e.g., Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
24  17-CV-5169, 2018 WL 2558388, at *3 (C.D. Cal. Feb. 27, 2018) ("pleading standards of Cedars-Sinai's DTSA and CUTSA claims are the same"); *Shapiro v. Hasbro, Inc.*,
25  16-CV-05750, 2016 WL 9024810, at *7 (C.D. Cal. Aug. 15, 2016) ("The definitions of 'trade secret' and 'misappropriation' under the DTSA are almost identical to that of
26  the CUTSA."); *Veronica Foods Co. v. Ecklin*, 16-CV-07223, 2017 WL 2806706, at *12 (N.D. Cal. June 29, 2017) (same). And the Court may appropriately dismiss
27  Plaintiff's negligent-interference claim as preempted by CUTSA even where Plaintiff has not pled a CUTSA claim against Cloudflare. *See, e.g., Robert Half Int'l, Inc. v.*
28  *Ainsworth*, 68 F. Supp. 3d 1178, 1192 (S.D. Cal. 2014) (dismissing certain claims as preempted by CUTSA despite plaintiff not asserting a CUTSA claim).

some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [or negligent] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.'" *Livewirecyber, Inc. v. Lee*, 17-CV-00645, 2017 WL 4786087, at *4 (C.D. Cal. Aug. 3, 2017) (quoting *Crown Imports, LLC v. Superior Court*, 223 Cal. App. 4th 1395, 1404 (2014)). Further, a duty of care must exist between Plaintiff and Cloudflare and have been violated. *See, e.g.*, *W. Air Charter, Inc. v. Schembari*, 17-CV-00420, 2017 WL 7240775, at *5 (C.D. Cal. Dec. 14, 2017); *Arc Machines, Inc. v. Indus. Sols. & Innovations, LLC*, 13-CV-9473, 2014 WL 12687418, at *2 (C.D. Cal. July 8, 2014).

Plaintiff has not plausibly pled, among other things, (i) that Cloudflare had any knowledge of Plaintiff's alleged economic relationships, (ii) that Cloudflare's actions were negligent, (iii) that Cloudflare's actions were designed to disrupt any of Plaintiff's relationships, (iv) that any actual disruption of a relationship occurred, or (v) that Cloudflare owed any duty of care to Plaintiff. Instead, Plaintiff simply parrots some of the elements of a negligent-interference claim, without plausibly alleging any facts. *See* Compl. ¶¶ 137-143. Such allegations do not give rise to a plausible claim under *Twombly* and *Iqbal*. The Court should therefore dismiss Plaintiff's negligent-interference claim for this independent reason.

### E.   The Court Should Dismiss Plaintiff's Declaratory Judgment Claim (Count 13)

The Court should dismiss Plaintiff's cause of action for "declaratory relief" as the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, does not create an independent cause of action. *See, e.g.*, *ISE Entm't Corp. v. Longarzo*, 17-CV-9132, 2018 WL 1569803, at *10 (C.D. Cal. Feb. 2, 2018) ("[I]t is well-established that the Declaratory Judgment Act does not create an independent cause of action.") (citations and quotations omitted); *City of Richmond v. Trump*, 17-CV-01535, 2017 WL 3605216, at *5

(N.D. Cal. Aug. 21, 2017) ("The Declaratory Judgment Act creates a remedy for litigants but is not an independent cause of action."); *see also Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) ("this Act only creates a remedy"); *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 Fed. App'x 680, 684 (9th Cir. 2014) ("Declaratory and injunctive relief are remedies, not causes of action.").

Nor may Plaintiff, through a declaratory-judgment claim, obtain resolution of issues that will necessarily be decided in connection with its other substantive claims. *ISE Entm't Corp*, 2018 WL 1569803, at *10; *Tirabassi v. Chase Home Fin., LLC*, 14-CV-08790, 2015 WL 1402016, at *11 (C.D. Cal. Mar. 24, 2015) ("Because Plaintiff's request for declaratory relief would not entitle him to any relief beyond what Plaintiff may seek in connection with his substantive claims, a separate request for declaratory relief is inappropriate."); *Strome v. DBMK Enterprises, Inc*., 14-CV-02398, 2014 WL 6485533, at *5 (N.D. Cal. Nov. 19, 2014) ("When the issues to be decided in a declaratory judgment would be redundant of other causes of action already before the court, a court may decline to provide declaratory relief.").

Finally, because the other causes of action Plaintiff asserts against Cloudflare do not state claims for relief, Plaintiff is not entitled to declaratory relief. *See, e.g.*, *Haro v. Trinity Fin. Servs., LLC*, 15-CV-1185, 2015 WL 12001260, at *6 (S.D. Cal. Aug. 31, 2015) ("Because Plaintiff has failed to state a claim elsewhere, she has not established the 'substantial controversy' necessary for a declaratory judgment."); *Chan v. Chancelor*, 09-CV-1839, 2011 WL 5914263, at *6 (S.D. Cal. Nov. 28, 2011) (same).

### F.   The Court Should Dismiss All Of Plaintiff's Claims Against Cloudflare With Prejudice

The Court should deny Plaintiff leave to amend on futility grounds—i.e., there is no basis in law to hold Cloudflare liable for the acts of the Hacker, so any amendment is futile. *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034,

1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."); *Caraccioli v. Facebook, Inc.*, 700 Fed. App'x 588, 590 (9th Cir. 2017) (affirming district court's denial of motion for leave to amend in Section 230 case); *Beckman v. Match.com, LLC*, 668 Fed. App'x 759, 760 (9th Cir. 2016) (same); *Hullinger v. Anand*, 15-CV-07185, 2015 WL 11072169, at *20 (C.D. Cal. Dec. 22, 2015) (dismissing claim based on CUTSA preemption with prejudice); *Custom Packaging*, 2015 WL 8334793, at *4 (same).

## IV. CONCLUSION

For these reasons, the Court should dismiss all of Plaintiff's claims against Cloudflare with prejudice.

Dated: July 6, 2018                     Respectfully submitted,

s/Steven Callahan
Robert J. Muller (SBN 189651)
 bob@cypressllp.com
Laurence Cheng (SBN 306299)
 larry@cypressllp.com
**CYPRESS LLP**

Steven Callahan (*Admitted Pro Hac Vice*)
 scallahan@ccrglaw.com
**CHARHON CALLAHAN
ROBSON & GARZA, PLLC**

*Counsel for Defendant Cloudflare, Inc.*

1

## **CERTIFICATE OF SERVICE**

2
3
4

     I hereby certify that on July 6, 2018, I caused a copy of the foregoing document to be served via electronic mail to all counsel of record who are deemed to have consented to electronic service using the Court's CM/ECF system.

5
6

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

7
8

/s/ Steven C. Callahan
Steven C. Callahan

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28